UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA RANGER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHARED IMAGING,<br><br>Defendant. | No. 2:20–cv–401–KJN<br><br>ORDER FOR SUPPLEMENTAL BRIEFING RE: RULE 23/PAGA SETTLEMENT |

Presently pending before the court in this wage-and-hour dispute is plaintiff Monica Ranger's motion for: (A) provisional certification of a Rule 23 settlement class and appointment of the class representative and class counsel; (B) preliminary approval of a class action settlement; (C) approval of the PAGA penalties settlement; and (D) appointment of the settlement administrator, approval of the notice to class members, and setting of a fairness hearing.[1] (ECF No. 41.) Defendant does not oppose. (ECF No. 44.)

The court has identified a number of issues requiring supplemental briefing. Counsel shall scrupulously review their proposed agreement, notice, briefing, and declarations to correct for the errors below and any others found.

---

[1] The assigned district judge took the motion under submission without a hearing. (ECF No. 46.) Thereafter, the parties consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72, and the case was reassigned to the undersigned. (See ECF Nos. 50, 52, 53.)

1.   <u>Discrepancy between Rule 23 class and PAGA contingent.</u>

The Settlement Agreement provides for $32,000 in PAGA penalties, out of the gross settlement amount of $800,000. (Settlement Agreement, ¶¶ 10, 17.) Only 25% of the Penalties, or $8,000, will be directed to the 131-139 PAGA members, as per Labor Code§ 2699(i). By comparison, it appears that $464,000 would be split amongst the 82 members of the Rule 23 Class (assumedly the 81 absent class members plus Ms. Ranger). Given the distribution of funds, the court is highly concerned that the Rule 23 class members are attempting to settle this case out from under the remaining 50+ PAGA members who are not Rule 23 class members.[2] This potential outcome is especially troublesome given that the Agreement appears to release defendant from all claims from both the Rule 23 class members and PAGA members. This calls into question the fundamental fairness of the Agreement, and nowhere does the court see the parties addressing this discrepancy. To explain:

The 2AC asserts claims for failure to compensate for forfeited rest period and meal periods, failure to pay overtime wages, failure to provide accurate pay stubs, failure to reimburse for business expenses, as well as a § 17200 claim and PAGA Penalties claim. (ECF No. 26.) Correspondingly, the parties' definition of "Released Claims" includes "any federal, state, or local law, regulation, wage order, or administrative order that were [sic] raised in the Lawsuit and that could have been raised in the Lawsuit based on the allegations therein," including failure to pay minimum and overtime wages, reimburse for expenses, give meal/rest breaks, timely pay wages on termination, and provide accurate wage statements." (Settlement Agreement, ¶ 20.) Critically, the Agreement also states: "Plaintiff and each Participating Class Member **and PAGA Member** [who has not requested exclusion] shall fully release and discharge Defendant and Released Parties from the Released Claims." (<u>Id.</u> at ¶ 36.)

Setting aside that PAGA members cannot exclude themselves as ¶ 36 indicates (<u>see</u> Section 4 below), and setting aside the fact that the scope of the released claims in ¶ 20 appears to

---

[2] Counsel estimates there are 82 members of the Rule 23 class, and as of the date of the settlement agreement there were between 131 and 139 members of the PAGA group (including the 82 Rule 23 class members). (<u>See</u> ECF No. 41-1 at ¶¶ 16, 17.) The additional 50+ PAGA workers' claims appear tied to the 2AC in the same way as the other 82 class members. (ECF No. 26.)

stretch beyond the facts and claims in the 2AC (see Section 2, below), it appears that the 50+ members of the PAGA contingent who are not included in the Rule 23 class would be barred from bringing any future claims against defendant related to the facts of this case. This appears to include PAGA penalties (for which they are being compensated) and any potential failure on defendant's part to pay overtime/meal/rest/etc. (for which they apparently will receive no compensation).

This distinction is important because the Rule 23 class members appear in line to receive a not-insignificant amount of the Net Fund—by the court's estimate, an average of either $7,700 or $3,500 each, depending on the subclass. This amount includes their share of the 25% employee-designated PAGA penalties. Conversely, the remaining 50+ Aggrieved Workers stand to gain only the PAGA penalties amounts—an average of just $58 ($8,000 / 139 workers). Thus, it appears to the court that plaintiff is attempting to settle all claims with defendants for the benefit of the 82 class members and at the expense of the other 50+ workers—all of whom lose their right to bring claims against defendant for the released claims.

Giving the parties the benefit of the doubt, they will be allowed to submit supplemental briefing on this disparity, and why such a judgment is fair and reasonable. Fed. R. Civ. P. 23(e); Cal. Lab. Code § 2699(l)(2); Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (noting that district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate"). Should the parties decide that an addendum to the Settlement Agreement is needed (as is allowed for under ¶ 61), they shall submit it alongside the supplemental brief.[3]

---

[3] Hypothetically, if the 50+ PAGA members released any PAGA penalties claim against defendant—but did not release any potential claims for overtime pay, meal pay, rest-pay or the like, this might satisfy the court's concerns (to the extend this could be done).

Alternatively, if defendant were concerned with effectuating a global settlement of all claims, the court could see an expansion of the class to include a Rule 23 settlement class for the remaining 50+ workers. However, as the court has no information on whether these individuals can form a class—i.e. whether there are common claims that Ms. Ranger's claims could typify, and these claims would predominate over individualized issues—the court cannot say whether this is feasible.

The parties are welcome to consider the breadth and depth of their Agreement and submit a supplement or new agreement as they see fit.

2. Scope of Released Claims

Related to the first issue, in the Notice to Class Members, the release of claims section on page 5 appears to cite additional provisions that are not pleaded in the 2AC and not mentioned in the Settlement Agreement, including Cal. Lab. Code §§ 201, 202, 203, 204, 226, 1174(d), 1194.2, and 1197.  The court supports the concept of a global settlement between class members and defendant, but nowhere in the 2AC does the court find plaintiff asserting facts that support claims for wait time penalties upon termination, failure to set pay periods, failure to make records available, failure to keep records, or failure to pay minimum wage.  See Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 537 (2021) (noting that in a class action settlement, "a clause providing for the release of claims . . . may refer to all claims, both potential and actual, that may have been raised in the pending action with respect to the matter in controversy[,]" but also reminding that "a release of claims [going] beyond the scope of the allegations in the operative complaint is impermissible.") (cleaned up).

It is possible the Class Notice includes errant citations (as there are many errors present in plaintiff's briefing); if this is the case, plaintiff may simply resubmit the Class Notice with a correct list of the released claims.  However, if the parties intend to settle claims beyond what was alleged and factually supported in the 2AC, plaintiff may file an amended complaint that covers the additional Labor Code sections—if counsel has a basis for doing so under Rule 11(b)(3).

3. Defendant's Maximum Exposure

Throughout the briefing, plaintiff's counsel provides estimates regarding defendant's maximum exposure; this culminates in an estimate of over $2.4 million.  (ECF No. 41-1 at ¶ 46.) However, it is unclear whether this amount is inclusive or exclusive of the potential maximum PAGA penalties.  Clarification is important for the court to be able to accurately assess the adequacy of relief provided to the class, as required by Rule 23(e)(2).  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964 (9th Cir. 2009) (noting that when determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class).  Counsel shall clarify this issue, especially if the holding of Naranjo v. Spectrum Sec., 13 Cal. 5th 93 (2022) applies (regarding available penalties for meal/rest breaks).

        4.  <u>No Opt-Out Provision for PAGA Aggrieved Workers</u>

Paragraph 22 of the Settlement Agreement states a Class Member must submit a letter to the Administrator indicating they wish to be excluded from the settlement. Paragraph 36 states that "Plaintiff and each Participating Class Member <u>and PAGA Member</u> who has not returned to the Administrator a valid and timely Request for Exclusion, shall fully release and discharge Defendant and Released Parties from the Released Claims." (emphasis added). Par. 53 is titled "Release of Claims by Class Members and <u>PAGA Members</u>," and states in part:

> Upon the Effective Date, all Class Members who do not timely submit a valid Request for Exclusion, do and will be deemed to have fully, finally and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all Released Claims accruing during the Class Period.

Thus, the Agreement could indicate that PAGA members can opt out of the settlement. This is, of course, improper. See <u>Amaro</u>, 69 Cal. App. 5th at 541 n.5 ("Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim." (cleaned up)).

Now, the Class Notice appears to recognize that exclusion from the settlement does not allow for opting out of the PAGA settlement. To the extent counsel believes the Agreement should be interpreted as only allowing for the Rule 23 class members to opt out, this argument should be stated in the supplemental brief alongside authority for the court to so construe these provisions. Should the parties require an amendment to the Agreement to clarify this mechanic, they may submit this alongside the supplemental briefing.

        5.  <u>Other Issues with Notice to the Class</u>

The Notice of Class Settlement provided as Exhibit B to the Guez Declaration is rife with errors. For example, the notice informs the class members they have 60 days to submit their exclusion paperwork or dispute their estimated work weeks, but the Settlement Agreement only provides for 45 days for these submissions. Further, as noted above, the Notice appears to release defendant's liability on claims beyond the 2AC. Finally, while the box on page 1 notifies the class members they can do nothing and receive a payment, exclude themselves from settlement, object, or change their contact info, there is no provision notifying them they can dispute the

information provided to them about their workweeks (as allowed by the Agreement, ¶ 41.)

Counsel shall judiciously scrub the Class Notice and correct these and any other errors so it conforms to the Agreement.

6. <u>Errors in Briefing</u>

Finally, the court notes that multiple citations in the moving brief pointing to the Guez declaration do not correspond to the paragraphs of the Guez declaration itself. For example, on page 14 of plaintiff's memorandum (ECF No. 41-4) contains a reference to Guez Decl., ¶ 67, but the Guez Decl. only goes up to ¶ 52. The court has been able to track down most of these errant cites, and so may be able to work around counsel's multiple unforced errors. However, given that the parties are being required to supplement their briefing on other issues, this is counsels' opportunity to provide further clarification on any of its briefing, should they wish to do so. Continued unforced errors may result in further delays of the court's review of the motion or denial of the entire motion without prejudice.

**ORDER**

It is HEREBY ORDERED that, within 30 days, plaintiff shall provide responses to the issues identified herein; given defendant's prior non-opposition, it may sign on to plaintiff's response, or may file its own supplemental response 14 days thereafter.

Dated: February 22, 2023

rang.401

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE