JOSHUA H. WATSON, SBN 238058
**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: jstralen@justice4you.com

Attorneys for Plaintiff
MONICA RANGER individually and
on behalf of those similarly situated

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MONICA RANGER, individually and on behalf of all those similarly situated,

　　　　　　Plaintiff,

vs.

SHARED IMAGING, a Limited Liability Company and DOES 1 THROUGH 100, inclusive,

　　　　　Defendants.

THIRD AMENDED CLASS ACTION COMPLAINT

***Jury Trial Demanded***

1. Failure To Pay Compensation for Forfeited Rest Periods— Cal. Labor Code § 226.7
2. Failure To Pay Compensation for Forfeited Meal Periods— Cal. Labor Code § 226.7
3. Failure To Pay Overtime Wages— Cal. Labor Code §§ 510 and 1194 (Wage Order 5-2001)
4. Failure To Provide Accurate Pay Stubs— Cal. Labor Code § 226
5. Violation of Business and Professions Code §§ 17200, et. seq (Unlawful Prong).
6. Failure to Indemnify/Reimburse Business Expenses – Cal. Labor Code § 2802;
7. Claim for Penalties Pursuant to PAGA – Cal. Labor Code § 2699 et seq.
8. Waiting Time Final Wages

Plaintiff(s) MONICA RANGER (hereinafter "PLAINTIFF"), individually and on behalf of all those similarly situated, alleges and complains as follows, and prays for relief from the court as set forth hereinbelow:

## I.    NATURE OF THE ACTION

1.    This is class action originally filed in the Superior Court of the State of California, Sacramento County, under California Code of Civil Procedure § 382 for damages, restitution, penalties, interest, attorneys' fees and costs, and injunctive relief brought under the California Labor Code and California Business & Professions Code sections 17-200, et seq. on behalf of Plaintiff, and all other individuals who are or have been employed as nuclear medicine technologists by SHARED IMAGING, LLC. and DOES 1-100 (hereinafter collectively referred to as "DEFENDANTS") in California during the four years prior to the filing of this action, for failure to pay compensation for forfeited rest periods, failure to pay compensation for forfeited meal periods, and failure to pay compensation for overtime. Plaintiff also seeks by way of this action penalties pursuant to California's Private Attorney General Act.

2.    The term "CLASS PERIOD" as used in this Complaint shall mean the period from the date four years prior to the date of the filing of this Complaint through the date the Court certifies the class defined hereinbelow. The violations of California Labor Code § 226.7 alleged in this Complaint are continuing at present, and will continue unless and until enjoined by the Court.

3.    Plaintiff notified the Labor Commissioner under the Public Attorney General Act ("PAGA") of violations referenced herein on January 20, 2020.

4.    The California Labor Code guarantees certain rights to employees.  In recognition of the more favorable bargaining positions employers generally have over employees, these laws, along with additional regulations that were adopted to carry out their enforcement, require employers to comply with certain standards with regard to rest breaks and compensation for the involuntary forfeiture thereof, meal breaks and compensation for the involuntary forfeiture thereof, amounts of wages, credits against wages, timing of payment, record keeping, posting of notice of notices, and the workplace environment in general.  DEFENDANTS have violated these

laws and regulations and incurred liability to Plaintiff individually, and other employees who work as nuclear medicine technologists by engaging in the following conduct:

   a. Failing to pay compensation for involuntarily forfeited rest periods, in violation of Labor Code § 226.7;

   b. Failing to pay compensation for involuntarily forfeited meal periods, in violation of Labor Code § 226.7;

   c. Failing to pay compensation for overtime, in violation of Labor Code §§ 510 and 1194; and

   d. Failing to provide paystubs in compliance with California law.

5. This is also a representative action under California Business & Professions Code § 17200, et. seq., on behalf of Plaintiff and all individuals similarly situated who are employed by or were formerly employed by DEFENDANTS within the State of California during the CLASS PERIOD.

6. PLAINTIFF, on behalf of herself and on behalf of other current and former nuclear medicine technologists employed by DEFENDANTS also seeks injunctive relief, restitution, and other available relief for the violations alleged in this Complaint, pursuant to Business & Professions Code §§ 17200, 17208, or any other applicable law, statute, regulation, or common law authority.

## II.    JURISDICTION and VENUE

7. Defendant removed this case to the above captioned Court.

## IV.    THE PARTIES

8. PLAINTIFF resides in Sacramento County, California. From January 21, 2019 through the present, Plaintiff has been employed by DEFENDANTS. PLAINTIFF and the members of the class which PLAINTIFF seeks to represent (hereinafter "CLASS MEMBERS") are or were non-exempt employees of DEFENDANTS who 1) involuntarily forfeited meal breaks and did not receive compensation therefor as required by California Law; 2) involuntarily forfeited rest periods and did not receive compensation therefor as required by California Law; and 3) did not receive compensation as required by California law for all overtime hours worked.

9.    DEFENDANT Shared Imaging, LLC. is a Illinois corporation which offers medical imaging throughout California.

10.    The true names and capacities, whether individual, corporate, associate or otherwise of the DEFENDANTS named herein as DOES 1 through 100, are unknown to PLAINTIFF at this time. PLAINTIFF therefore sues said DEFENDANTS by such fictitious names, Does 1 through 100.  PLAINTIFF will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 100 when their names are ascertained. PLAINTIFF is informed and believes, and based thereon alleges, that each of the DOE DEFENDANTS is in some manner liable to PLAINTIFF and/or other Class Members for the events and actions alleged herein.  Unless otherwise specified by name, all named DEFENDANTS and DOES 1 through 100 will be collectively referred to as "THE DOE DEFENDANTS."

11.    Based upon information and belief, PLAINTIFF alleges that at all times mentioned herein, each and every defendant was acting as an agent and/or employee or joint venturer of each of the other DEFENDANTS, and at all times mentioned was acting within the course and scope of said agency and/or employment and/or joint venture with the full knowledge, permission, and consent of each of the other DEFENDANTS.  In addition, each of the acts and/or omissions of each defendant alleged herein were made known to, and ratified by, each of the other DEFENDANTS.

12.    DEFENDANTS and each of them were engaged in a common enterprise for which all have joint liability. At all times relevant herein, DEFENDANTS, and each of them, maintained joint control and were in law and in fact "Joint Employers" of PLAINTIFF and CLASS MEMBERS. At all times relevant herein, DEFENDANTS retained and exercised the right to control the manner and means by which DEFENDANTS, and each of them, had their employees accomplish their work, and controlled the work of all employees in the class, whether or not directly employed by DEFENDANTS (versus through an agent including but not limited to a staffing agency).  This included but was not limited to direct control over hours worked, timing of shifts and breaks, timing of appointments with patients, and all terms and conditions of employment and methods of completing assigned work.

## V.     **FACTUAL BACKGROUND**

13.     DEFENDANTS operate, and at all times during the CLASS PERIOD, have operated a medical imaging business, which provides services to patients of doctors affiliated with medical facilities in Sacramento County, California and throughout California.

14.     DEFENDANT employees no fewer than several dozen nuclear medicine technologists throughout the state of California, including PLAINTIFF, who has been employed by DEFENDANT from January 2019 through the present.

15.     Throughout the time that PLAINTIFF has been employed by DEFENDANT, DEFENDANT has contracted with Kaiser medical facilities to provide nuclear technologists to provide services to Kaiser patients.

16.     From the inception of her employment through mid-march 2020, Plaintiff had regularly worked at two Kaiser facilities: Kaiser Elk Grove, which is commonly referred to as Kaiser South Sacramento, and Kaiser Stockton. On one occasion, Plaintiff worked a shift at Kaiser Petaluma.

17.     From the inception of her employment through mid-March 2020, PLAINTIFF has regularly worked three or four shifts per week on an alternating basis. From mid-March 2020 through the time of the filing of this first amended complaint, PLAINTIFF has worked two shifts per week.

18.     During those weeks when Plaintiff has worked three shifts, Plaintiff has worked on Saturdays, Sundays and Mondays. During those weeks when Plaintiff has worked four shifts, Plaintiff has worked Saturdays, Sundays, Mondays and Fridays. Put another way, Plaintiff has regularly worked every Saturday, Sunday, and Monday and has worked every other Friday from the beginning of her employment through mid-March 2020. From mid-March 2020 through the present, Plaintiff has worked on Saturdays and Sundays.

19.     As a nuclear medicine technologist, Plaintiff's job is to safely conduct positron emission tomography ("PET") scans pursuant to orders issued by physicians affiliated with the Kaiser facilities where Plaintiff works on patients referred to undergo such scans by their

physicians.

20.    In order to carry out a PET scan on a patient, PLAINTIFF must administer a radioactive tracer compound to each patient through an IV. Throughout her employment with DEFENDANT, PLAINTIFF has used one of three different tracer compounds on each patient. One of the three tracer compounds is FDG tracer, which is derived from fluorine, and which PLAINTIFF administers to approximately 80% of the patients she works on. Another tracer compound is NAF tracer, which is also derived from fluorine, and which PLAINTIFF administers to approximately 10% of the patients she works with. The third tracer compound is DOTATATE, which is derived from gallium, and which is administered to 10% of the patients she works with.

21.    As these three compounds are derived from radioactive material, each compound decays. The rate of decay is called a half life. The two fluorine based tracer compounds (FDG and NAF) have a half life of 110 minutes. The gallium based compound (DOTATATE) has a rate of decay of 60 mintues.

22.    The efficacy of a PET scan administered to a patient who has been administered FDG tracer depends on whether the patient adhered to standard physicians' instructions for preparing for the scan, including abstaining from taking insulin or eating for 6 hours prior to their scan appointment.

23.    Throughout Plaintiff's employment, Plaintiff has begun each shift at 6 am. The first series of tasks Plaintiff completes each shift are directed at verifying that all of the equipment and materials necessary for carrying out her work are in working order. These tasks include calibrating the PET scan camera, performing phantom scans, and performing quality control tasks on the equipment she uses for administering radioactive tracer materials to the patients who she will see throughout her workday. It typically takes Plaintiff approximately one hour to carry out these quality control/set-up functions.

24.    PLAINTIFF'S job functions are common to all CLASS MEMBERS.

25.    At all times during PLAINTIFF's employment, at both the Stockton and South Sacramento Kaiser locations where PLAINTIFF has worked, PLAINTIFF's work schedule has been set by DEFENDANT.

COMPLAINT FOR DAMAGES:                6

26.     At all times during PLAINTIFF's employment, PLAINTIFF has been scheduled by DEFENDANT to see and conduct PET scans on 14 patients every work shift. Per the schedule imposed by DEFENDANT, the first patient of the day is scheduled to arrive for check-in at 7:00 am; the second patient is scheduled to arrive for check-in at 7:30 am; the third patient is scheduled to arrive for check-in at 8:00 am; the fourth patient is scheduled to arrive for check-in at 9:00 am; the fifth patient is scheduled to arrive for check-in at 10:00 am; the sixth patient is scheduled to arrive for check-in at 12:00 pm; the seventh patient is scheduled to arrive for check-in at 12:30 pm; the eighth patient is scheduled to arrive for check-in at 1:00 pm; the ninth patient is scheduled to arrive for check-in at 2:00 pm; the tenth patient is scheduled to arrive for check-in at 2:30 pm; the eleventh patient is scheduled to arrive for check-in at 3:00 pm; the twelfth patient is scheduled to arrive for check-in at 3:00 pm; the thirteenth patient is scheduled to arrive for check-in at 4:00 pm; the fourteenth and final patient of the day is scheduled to arrive for check-in at 4:30 pm. Thus, 8 of the 14 patients (the 7:30 am, 8:00 am, 9:30 am, 10:00 am, 12:30 pm, 2:30 pm, 3:00 pm and 4:30 pm scheduled patients) are scheduled to arrive 30 minutes after the preceding patient.

27.     Throughout Plaintiff's employment, PLAINTIFF has not had a regularly scheduled meal break.

28.     Patients commonly arrive late for their scheduled appointments.

29.     PLAINTIFF is required by DEFENDANTS to carry out PET scans on all patients, regardless of when they arrive.

30.     The tasks PLAINTIFF must carry out with each patient may be described in three phases.

31.     Every patient to be worked on by PLAINTIFF must first check in with a receptionist.

32.     Following check-in, the first phase of work carried out by PLAINTIFF on each patient is as follows: PLAINTIFF reviews orders issued by the physician who ordered the PET scan. PLAINTIFF then interviews the patient to assess whether the patient has complied with physicians' orders for preparing to undergo the scan, e.g. when FDG is to be administered, whether the patient fasted and abstained from insulin use for 6 hours prior to arrival. PLAINTIFF

then sets up an IV on the patient. The purpose of the IV is to enable PLAINTIFF to administer whichever radioactive tracer compound is called for.

33.     Some patients adhere to prep instructions. Some patients do not.

34.     PLAINTIFF is required to seek and obtain authorization from the reading radiologist prior to conducting a PET scan on any patient who failed to adhere to prep instructions. A conservative estimate of the time this takes is 15-20 minutes.

35.     The second phase of work carried out by PLAINTIFF is the administration of the given radioactive tracer compound. Pursuant to DEFENDNANT'S protocols, whichever of the three tracer compounds which is administered to a given patient must circulate in a patient's bloodstream for not less than 50 minutes and not more than 60 minutes before PLAINTIFF initiates the PET scan.

36.     The third phase of work carried out by PLAINTIFF is the administration of the PET scan. This includes helping the patient remove clothes, helping the patient don appropriate attire to undergo the scan, positioning the patient under the camera in order to obtain the imaging which was ordered, and carrying out the imaging. Typically, for patients who have been administered one of the fluorine-based compounds, this third phase takes 20-25 minutes to complete when the scan is not of a patient's entire body and when the scan is not of a patient's brain. Whole body scans typically take 35-40 minutes. Brain scans typically take 25-30 minutes. For patients who have been administered the gallium-based compound, phase three typically takes longer.

37.     Barring obstacles (which are described below) to efficiently completing PLAINTIFF's work with a given patient, A conservative estimate of the time it takes PLAINTIFF to complete phases 1 through 3 with a given patient is 90 minutes, when one of the fluorine based compounds is used. A conservative estimate of the time it takes PLAINTIFF to complete phase 3 is 120 minutes when the gallium-based compound DOTATATE is used.

38.     Certain circumstances commonly arise which extend the time it takes PLAINTIFF to complete her work with a given patient. As noted above, patients commonly fail to show up for appointments on time. The delaying impact of this is twofold: First, the failure of a patient to

show up on time results in the appointment beginning later. Second, the failure of the patient to show up on time results in decay of the tracer compound. Use of a decayed compound results in the degradation of PET scan images. PLAINTIFF is required to obtain authority from the reading radiologist to carry out a scan using decayed compound. The process of attempting to contact and obtain authority from a reading radiologist adds 15-20 minutes to the process. Another circumstance which causes delay is the failure of patients to adhere to the preparation instructions issued by the ordering physician. When PLAINTIFF learns during phase one that a patient has failed to adhere to prep instructions, PLAINTIFF must seek and obtain authority from a physician before carrying out the rest of her work, and document whether she obtained such authority.

39.    The delaying factors referred to in the preceding paragraph are common, frequent and, consequently, foreseeable from DEFENDANTS' perspective.

40.    PLAINTIFF'S clinical obligations, as described hereinabove, which include conducting phases one through three on 14 patients at overlapping intervals throughout every work shift, are such that 1) it is impossible for PLAINTIFF to take any legally required meal break over the course of any workday; 2) it is impossible for PLAINTIFF to take any legally required rest break throughout her workday and 3) it is necessary that PLAINTIFF work no fewer than 13 hours each shift. The same is true of all CLASS MEMBERS. DEFENDANTS' have thus incurred an obligation to pay overtime wages to PLAINTIFF and CLASS MEMBERS pursuant to California Law. DEFENDANTS' have failed to pay PLAINTIFF and CLASS MEMBERS for all overtime hours worked, and have failed to calculate overtime compensation owed to PLAINTIFF and CLASS MEMBERS in a manner consistent with California law.

41.    Paystubs furnished by DEFENDANT to PLAINTIFF and CLASS MEMBERS do not reflect PLAINTIFF'S involuntarily forfeited meal or rest breaks. Nor do they accurately reflect the amount of overtime hours worked by PLAINTIFF and CLASS MEMBERS or the manner in which DEFENDANT calculates overtime premiums earned by PLAINTIFF and CLASS MEMBERS.

43.    PLAINTIFF and Class Members are expected and/or required by DEFENDANTS to use their personal smart phones to effectuate DEFENDANTS' business purposes.

44.    The trailers in which PLAINTIFF and CLASS MEMBERS work do not have fixed phones; nor to DEFENDANTS provide PLAINTIFF and CLASS MEMBERS with any phones whatsoever.

45.    In order for PLAINTIFF and CLASS MEMBERS to carty out their work tasks, they must regularly communicate with medical service providers by phone, as well as with colleagues employed by DEFENDANTS. PLAINTIFFS are and have throughout the CLASS PERIOD been unable to so communicate without using their personal smart phones in order to do so. DEFENDANTS are and have been throughout the Class Period aware of this circumstance.

46.    In addition, PLAINTIFFS and CLASS MEMBERS must, in order to carry out their work tasks, must order the afore described radioactive tracer compounds via an online system which requires PLAINTIFFS and CLASS MEMBERS to enter unique credentials in order to access the system and place such orders. PLAINTIFFS and CLASS MEMBERS are expected by DEFENDANTS to, and do, use a Siemens app on their smart phones in order to place such orders.

47.    In addition, PLAINTIFFS and CLASS MEMBERS are required and/or expected to use human resources app called iSolved, which enables DEFENDANTS to monitor PLAINTIFF and CLASS MEMBERS' work hours.

48.    DEFENDANTS do not, and throughout the CLASS PERIOD have not, fully reimbursed/indemnified PLAINITF and CLASS MEMBERS for the use of their personal smart phones for DEFENDANTS' business purposes.

49.    DEFENDANTS have maintained these same unlawful policies and/or practices or substantially similar ones throughout the CLASS PERIOD.

50.    DEFENDANTS are and have been aware throughout the CLASS PERIOD that DEFENDANTS have maintained these same unlawful policies and/or practices.

51.    PLAINTIFF and CLASS MEMBERS have been harmed by DEFENDANTS' unlawful payroll policies and or practices alleged in this Complaint in amounts to be proved at trial.

## VI.    CLASS ACTION ALLEGATIONS

COMPLAINT FOR DAMAGES:              10

52.    PLAINTIFF brings this action, on behalf of herself and all others similarly situated, as a class action. The class that PLAINTIFF seeks to represent is composed of and defined as follows:

"All persons who are or have been employed, at any time from four years prior to the date this Complaint is filed through the date of the Court's granting of class certification in this matter in California by DEFENDANTS, as nuclear medicine technologists."

53.    PLAINTIFF reserve the right to amend the complaint to amend the class definition or define or alter sub-classes.

54.    This and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure as CLASS MEMBERS are numerous such that the class device is the most efficient vehicle for seeking vindication of their rights, issues pertaining to liability are common to all CLASS MEMBERS, PLAINTIFF's claims are typical of those of the CLASS MEMBERS, and PLAINTIFF is an adequate representative of the class.

55.    Ascertainability: The identities of CLASS MEMBERS may be determined by any of a number of methods, including but not limited to reference to Defendant's employment records. For instance, California Labor Code § 1198.5 requires employers to maintain employee records for at least three years from the date of employment termination. DEFENDANTS may reasonably be expected to have the records necessary to promptly identify (and give notice to) CLASS MEMBERS. CLASS MEMBERS who may not be included within DEFENDANTS' records for whatever reason may be ascertained by financial records of either DEFENDANTS' or class members' (e.g. direct deposit, paystubs, W2's, etc.). Because the violations of California Labor Code § 226.7 alleged in this Complaint result from enterprise-wide policies and/or practices, all employees working for DEFENDANTS throughout California in the CLASS PERIOD are class members.

56.    Numerosity:  The potential members of the class as defined are numerous and therefore joinder of all CLASS MEMBERS is impracticable. While the precise number of CLASS MEMBERS has yet to be determined, PLAINTIFF is informed and believes that the CLASS

MEMBERS number in the dozens. Given this number of CLASS MEMBERS, it is not practicable to join all to the litigation.

57.    Commonality: Questions of law and fact common to PLAINTIFF and CLASS MEMBERS predominate over any individual concern of PLAINTIFF or of any member of the class. Such common issues include but are not limited to:

a.    Whether DEFENDANTS' procedure/practice/method of failing to compensate PLAINTIFF and CLASS MEMBERS for involuntarily forfeited meal breaks as required by California law is unlawful;

b.    Whether DEFENDANTS' procedure/practice/method of failing to compensate PLAINTIFF and CLASS MEMBERS for involuntarily forfeited rest periods as required by California law is unlawful;

c.    Confirming the identity of the appropriate defendant(s), both with respect to liability and ability to satisfy the debt of compensation for involuntarily forfeited meal breaks to class members. There may be multiple or joint employers who must be identified, and whose relationships must be established;

d.    Confirming the identity of the appropriate defendant(s), both with respect to liability and ability to satisfy the debt of compensation for involuntarily forfeited rest periods to class members. There may be multiple or joint employers who must be identified, and whose relationships must be established;

e.    Whether DEFENDANTS' failure to pay legally required compensation for involuntarily forfeited rest breaks was willful;

f.    Whether DEFENDANTS' failure to pay legally required compensation for involuntarily forfeited meal breaks was willful;

g.    Whether DEFENDANTS' failure to pay legally required compensation for overtime was willful; and

h.    Whether the violations of the California Labor Code alleged in this complaint

and applicable Wage Order was an unfair business practice in violation of California Business & Professions Code §17200, et seq.

i.   Whether the nature of CLASS MEMBERS' work combined with CLASS MEMBERS' work schedule imposed by DEFENDANTS's is such that it is impossible for DEFENDANTS' to have complied with the requirements California Law regarding meal periods and rest periods.

58.   Typicality: PLAINTIFF'S claims are typical of the claims of the CLASS MEMBERS. PLAINTIFF and all members of the class sustained injuries and damages arising out of and caused by the DEFENDANTS' common course of conduct in violation of laws AND regulations that have the force and effect of law. Specifically, all CLASS MEMBERS, like PLAINTIFF, were denied the full amount of compensation for involuntarily forfeited meal breaks owed to them by DEFENDANTS, were denied the full amount of compensation for involuntarily forfeited meal breaks owed to them by DEFENDANTS, and were denied the full amount of compensation for overtime owed to them by DEFENDANTS.

59.   Adequacy:  PLAINTIFF has agreed to serve as a representative of all similarly situated employees to raise common claims. PLAINTIFF understands that she owes a fiduciary obligation to work with competent counsel and take actions to promote, advance and prevail on the claims being made, not just individually, but for the collective group of employees/putative class members as a whole. PLAINTIFF will fairly and adequately represent and protect the interests of CLASS MEMBERS. PLAINTIFF has agreed to represent the proposed class and act as a fiduciary for the CLASS MEMBERS. PLAINTIFF is aggrieved in manner similar to that in which are the CLASS MEMBERS, with the only variation being the amount of loss and damage suffered by individual employees as a result of DEFENDANTS' common, uniform and systematic practices of violating California law as alleged herein. Counsel who represent PLAINTIFF, and who seek to represent the putative class, are competent and experienced, readily able, and possessed of sufficient resources to successfully prosecute this class action.

60.   Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not

practicable, and questions of law and fact common to the class predominate over questions affecting only individual class members. Each class member has been damaged and is entitled to recovery by reason of the same unlawful behavior on DEFENDANTS' part. A class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judicial system. PLAINTIFF is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I

**(Claim for Payment of Premiums for Involuntarily Forfeited Meal Breaks Pursuant to Labor Code § 226.7)**

**(Against DEFENDANTS)**

61.    PLAINTIFF re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

62.    PLAINTIFF is informed and believes and based upon such information and belief alleges that throughout the CLASS PERIOD, all CLASS MEMBERS working as nuclear medicine technologists, including PLAINTIFF, were unlawfully denied the full amount of compensation for involuntarily forfeited meal breaks owed to them by DEFENDANTS under California law.

63.    As a direct and proximate result of such involuntary forfeiture of meal breaks, PLAINTIFF and CLASS MEMBERS were entitled to payment of one additional hour worth of wages at their regular rate of pay for each day worked within the CLASS PERIOD.

64.    PLAINTIFF and CLASS MEMBERS suffered damages in that, to date, they have not been and/or are not compensated for such involuntary forfeiture of meal breaks and by way of this action seek such compensation, interest thereon as allowed and/or required by law, costs of suit and reasonable attorney fees incurred in the prosecution thereof.

## COUNT II

**(Claim for Payment of Premiums for Involuntarily Forfeited Rest periods Pursuant to Labor Code § 226.7)**

COMPLAINT FOR DAMAGES:                14

**(Against DEFENDANTS)**

65.    PLAINTIFF re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

66.    PLAINTIFF is informed and believes and based upon such information and belief alleges that throughout the CLASS PERIOD, all CLASS MEMBERS working as nuclear medicine technologists, including PLAINTIFF, were unlawfully denied the full amount of compensation for involuntarily forfeited rest periods owed to them by DEFENDANTS under California law.

67.    As a direct and proximate result of such involuntary forfeiture of rest periods, PLAINTIFF and CLASS MEMBERS were entitled to payment of one additional hour worth of wages at their regular rate of pay for each day worked within the CLASS PERIOD.

68.    PLAINTIFF and CLASS MEMBERS suffered damages in that, to date, they have not been and/or are not compensated for such involuntary forfeiture of rest periods and by way of this action seek such compensation, interest thereon as allowed and/or required by law, costs of suit and reasonable attorney fees incurred in the prosecution thererof.

## COUNT III

**(Claim for Failure to Pay Overtime Wages in Violation of Labor Code §§ 510, 1194, and Wage Order No. 5-2001 § 3(A))**

**(Against DEFENDANTS)**

69.    PLAINTIFF re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

70.    PLAINTIFF is informed and believes and based upon such information and belief alleges that throughout the CLASS PERIOD, all CLASS MEMBERS working as nuclear medicine technologists, including PLAINTIFF, have been unlawfully denied the full amount of compensation for overtime wages owed to them by DEFENDANTS under California law.

71.    As a direct and proximate result of denial of paying overtime wages, PLAINTIFF

and CLASS MEMBERS were entitled to payment of wages at their regular rate of pay for each hour worked as follows:

> Eight hours of labor constitutes a day's work, and any work in excess of 8 hours in 1 workday and any work in excess of 40 hours in any one workweek and any work on the seventh consecutive day shall be compensated at the rate of no less than one and one half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day, or in excess of 8 hours on the seventh consecutive day shall be compensated at the rate of no less than twice the regular rate of pay for an employee

72.    PLAINTIFF and CLASS MEMBERS suffered damages in that, to date, they have not been and/or are not compensated for such overtime wages as required by law and by way of this action seek such compensation, interest thereon as allowed and/or required by law, costs of suit and reasonable attorney fees incurred in the prosecution thererof.

## **COUNT IV**

### **(Claim for Failure to Provide Accurate Pay Stubs in Violation of Labor Code § 226)**
### **(Against DEFENDANTS)**

73.    All prior paragraphs are incorporated by reference as though stated fully here.

74.    Labor Code § 226 subdivision (a) requires, in pertinent part, that "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of § 515 or any applicable order of the Industrial Welfare

Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . ." (Labor Code § 226 subdivision (a).)

75.     PLAINTIFF and CLASS MEMBERS are informed and believed and based upon such information and belief alleges that PLAINTIFFS never received any wage statement with all of the required information set forth under Labor Code § 226 from Defendants and that PLAINTIFF suffered damages from not receiving wage statements.

76.     PLAINTIFF and CLASS MEMBERS allege that on numerous occasions, an exact amount by which will be proven at trial, Defendants violated various provisions of § 226, including but not limited to subdivisions (a)(1), (a)(2), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), and (a)(9) by failing to provide PLAINTIFF accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee (4) all deductions (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

77.     For DEFENDANTS' misconduct as alleged in this Complaint, PLAINTIFFS seek actual damages, penalties, costs and attorneys' fees pursuant to Labor Code § 226 subdivision (e) in an amount to be proven at trial.

78.     For DEFENDANTS' misconduct as alleged herein, PLAINTIFF seeks injunctive

relief and attorneys' fees and costs pursuant to § 226 subdivision (g) in an amount to be proven at trial.

79.    PLAINTIFF seek, on behalf of herselves and class members penalties and/or damages throughout the applicable statute of limitations periods pursuant to Labor Code § 226(e) ($50 per employee per initial pay period, $100 per subsequent period up to $4,000 per employee.) PLAINTIFF seeks costs and attorney fees incurred attendant to this claim.

<u>**COUNT V**</u>

**(Claim Pursuant Business & Professions Code § 17-200 et seq. for Restitution and Injunctive Relief)**

**(Against DEFENDANTS)**

80.    All prior paragraphs are incorporated by reference as though stated fully here.

81.    The conduct by DEFENDANTS alleged herein constitutes business practices that are longstanding, systemic, intentional, and ongoing.

82.    Said practices are unlawful, as alleged in the foregoing.

83.    Said practices are unfair in that, *inter alia*, these practices deprive employees of compensation for involuntarily forfeited meal breaks to which they are entitled.

84.    Said practices are unfair in that, *inter alia*, these practices deprive employees of compensation for involuntarily forfeited rest periods to which they are entitled.

85.    Because of the scale of DEFENDANTS' operation in California, this wrongful behavior affects a meaningful group of Californians.

86.    PLAINTIFF, on behalf of herself and CLASS MEMBERS, seeks injunctive relief within the discretion of the court, including but not limited to an order that DEFENDANTS amend their business practices to comply unambiguously with Labor Code § 226.7.

87.    PLAINTIFF, on behalf of herself and CLASS MEMBERS, seeks restitution of compensation for involuntarily forfeited meal breaks, plus interest thereon, costs of suit and reasonable attorney fees incurred in the prosecution thereof.

88.    PLAINTIFF, on behalf of herself and CLASS MEMBERS, seeks restitution of compensation for involuntarily forfeited rest periods, plus interest thereon, costs of suit and

reasonable attorney fees incurred in the prosecution thereof.

89.     PLAINTIFF, on behalf of herself and CLASS MEMBERS, seeks restitution of compensation for overtime wages earned, plus interest thereon, costs of suit and reasonable attorney fees incurred in the prosecution thereof.

90.     Due to the public benefit conferred by such relief, PLAINTIFF, on behalf of herself and CLASS MEMBERS, seeks attorney fees pursuant to Code of Civil Procedure § 1021.5.

## **COUNT VI**

**(Failure to Indemnify/Reimburse Business Expenses in Violation of California Labor Code § 2802)**

**(Against DEFENDANTS)**

91.     All prior paragraphs are incorporated by reference as though stated fully here.

92.     California Labor Code § 2802 requires employers to indemnify their employees for expenses and losses incurred while discharging their duties or while acting in obedience to the directions of their employer.

93.     California Labor Code § 2804 mandates that this statutory right cannot be waived.

94.     PLAINTIFF and CLASS MEMBERS incurred losses while acting in obedience to the directions of DEFENDANTS, as set forth in paragraphs 43 through 38 hereinabove.

95.     To the extent that DEFENDANTS have maintained any policy of reimbursing PLAINTIFF and CLASS MEMBERS for the use of their personal smart phones, that policy is inadequate; and DEFENDANTS have at all relevant times been so aware.

96.     As a direct result of DEFENDANTS' violation of California Labor Code § 2802, PLAINTIFF and CLASS MEMBERS have suffered substantial losses related to unpaid expenses, the use and enjoyment of monies owed, lost interest on monies owed, and attorneys' fees in an amount to be proven at the time of trial.

97.     DEFENDANTS have derived an unjust and inequitable economic benefit in failing to compy with the law regarding indemnification and reimbursement of employees.

98.     For DEFENDANTS' violations of California Labor Code § 2802, PLAINTIFF

and CLASS MEMBERS are entitled to and hereby do seek back-owed reimbursement for the use of their personal smart phones, as well as interest, statutory and equitable attorneys' fees, costs, and applicable penalties in an amount to be proven at trial.

## COUNT VII

**(Claim on Behalf of PLAINTIFF and Similarly Situated Employees for Penalties Pursuant to PAGA – Labor Code § 2699, et. seq.)**

99.    All prior paragraphs are incorporated by reference as though stated fully here.

100.    As alleged above, DEFENDANTS failed to comply with the California Labor Code.

101.    PLAINTIFF and similarly situated employees including CLASS MEMBERS are "aggrieved employees" as defined by Labor Code § 2699(a). Pursuant to Labor Code § 2699, the Labor Code Private Attorneys General Act of 2004, PLAINTIFF notified the Labor Commissioner of the violations referenced herein and of PLAINTIFFS' intention to file this action on behalf of herself and other current and former employees of DEFENDANTS. Labor Commissioner did not respond to PLAINTIFF'S notice, filed under LWDA # CM-767755-20 on January 20, 2020,  within 60 days. PLAINTIFF has thus exhausted administrative remedy(ies) and pursues this claim for penalties pursuant to Labor Code § 2699, et. seq.

102.    PLAINTIFF seeks all applicable penalties, on behalf of herself and similarly situated employees that may be recovered pursuant to Labor Code § 2699 et seq in addition to other damages.

## COUNT VIII

**(Claim on Behalf of PLAINTIFF and Similarly Situated Employees for Waiting Time on Final Wages.)**

99.    All prior paragraphs are incorporated by reference as though stated fully here.

100.    To the Plaintiff or any class member's employment terminated but the employee was not paid for all premiums and wages alleged herein, Plaintiff and each such employee is

COMPLAINT FOR DAMAGES:             20

entitled to their regular wages for a period of 30 days due to nonpayment of wages as alleged herein, pursuant to Cal. Labor Code §§ 202, 203 and *Naranjo v Spectrum*, 13 Cal.5th 93 (2022).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  For payment of compensation for involuntarily forfeited meal breaks according to proof in an amount to be ascertained at trial;

2.  For payment of compensation for involuntarily forfeited rest periods according to proof in an amount to be ascertained at trial;

3.  For payment of compensation for overtime wages earned according to proof in an amount to be ascertained at trial;

4.  For payment of all statutory obligations and penalties as required by law;

5.  For penalties, special damages, and general damages in an amount to be proven at trial;

6.  For reasonable attorneys' fees as provided by statute;

7.  For costs of suit incurred herein;

8.   For interest provided by law;

9.  For penalties provided by law including, but not limited to, California Labor Code § 2699 et. seq.

10. For injunctive relief as the court deems proper, including but not necessarily limited to order(s) compelling ongoing compliance with Labor Code § 226.7.

11. For such other and further relief as the court deems just and proper.

12. For the purposes of due process and default judgment, Plaintiff set forth a prayer on behalf of herself and all putative CLASS MEMBERS of not more than $4,999,999.99 understanding that this amount to is arrived at purely for reservation of rights purposes and is subject to change, including increase, during litigation of this matter. Such damages pled are exclusive of costs and attorney fees.

Dated: June 7, 2023                          CLAYEO C. ARNOLD, APLC


                                    By:     /s/ Joshua H. Watson
                                            Joshua H. Watson
                                            *Attorneys for Plaintiff and the Class*


## **DEMAND FOR JURY TRIAL**


      PLAINTIFF demands trial by jury.


Dated: June 7, 2023                          CLAYEO C. ARNOLD, APLC


                                    By:     /s/ Joshua H. Watson
                                            Joshua H. Watson
                                            *Attorneys for Plaintiff and the Class*