1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11
12

MONICA RANGER, on behalf of herself
and all others similarly situated,

No.  2:20–cv–401–KJN

PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT

Plaintiff,

13

(ECF Nos. 41, 61.)

v.

14
15

SHARED IMAGING, LLC.

16

Defendant.

17          Presently pending before the court is plaintiff's unopposed motion for provisional

18   certification of a Rule 23 class and preliminary approval of the parties' class action and PAGA

19   settlement in this meal- and rest-break labor dispute.[1]  (ECF Nos. 41, 44, 61.)

20          For the following reasons, the court GRANTS provisional certification of the settlement

21   class, APPOINTS plaintiff as class representative and plaintiff's counsel from the Clayeo firm as

22   class counsel, GRANTS preliminary approval of the class action and full approval of the PAGA

23   settlement, APPROVES the class notice—after small modifications are made, and SETS further

24   deadlines.

25   ///

26

27   ───────────────────────
[1] The assigned district judge took the motion under submission without a hearing.  (ECF No. 46.)
Thereafter, the parties consented to the jurisdiction of a magistrate judge for all purposes, 28
28   U.S.C. § 636(a), and the case was reassigned to the undersigned.  (See ECF Nos. 50, 52, 53.)

1

1    I.    **BACKGROUND**

2         Plaintiff has worked for defendant Shared Imaging part-time from January 2019 through

3    the present as a nuclear medicine technologist "safely conduct[ing] positron emission tomography

4    ("PET") scans" for Kaiser health physicians.  She alleges that due to the nature of the work,

5    including defendant's setting of her work schedule and her patients' inefficiencies, it was

6    impossible for her to take meal or rest breaks despite regularly working 13+ hour shifts.  She also

7    alleges defendant failed to pay overtime wages and required her to use her personal phone for

8    business purposes without compensation.  She alleges these allegations are common to the class

9    and to all aggrieved workers under the Private Attorneys General Act ("PAGA").  (ECF No. 65.)

10        Plaintiff filed a case in California Superior Court in Sacramento on January 21, 2020;

11   soon thereafter defendant removed to this court on diversity jurisdiction grounds.  (ECF No. 1.)

12   The operative Third Amended Complaint ("3AC") asserts claims on behalf of a class defined as

13   "all persons who are or have been employed [within the class period] as nuclear medicine

14   technologists."  (ECF No. 65 at ¶ 52.)  The 3AC asserts claims for failure to pay premiums on

15   forfeited rest and meal periods under Cal. Labor Code § 226.7; failure to pay overtime wages

16   under Wage Order No. 5-2001 § 3(A) and Cal. Labor Code §§ 510 and 1194; failure to provide

17   accurate pay stubs under Cal. Labor Code § 226; failure to reimburse business expenses as

18   required by Cal. Labor Code § 2802; and failure to pay timely wages under Cal Labor Code § 202

19   and 203.  (Id. at 14-21.)  The 3AC also asserts an ancillary claim under Cal. Bus. Code § 17200

20   and a claim for PAGA penalties under Cal. Lab. Code § 2699.  (Id. at 18-20.)

21        In the years that followed, the parties exchanged discovery and negotiated over the size of

22   the class and damages.  (ECF No. 41-1 at ¶¶ 11-20, 23-29.)  On November 8, 2021, the parties

23   informed the court they had reached an agreement in principle, and the assigned district judge

24   stayed the case.  (Id. at ¶¶ 30-31.)  On May 10, 2022, the parties executed the longform

25   agreement to settle the case on behalf of plaintiff and the class.  (Id. at ¶ 34.)  On June 30, 2022,

26   plaintiff filed a motion seeking provisional certification of the class, court approval of the

27   settlement, and further scheduling for final approval of the settlement.  (ECF No. 41.)  The court

28   noted issues, and the parties supplemented their filings.  (ECF Nos. 54, 61, 63.)

1

**Terms of the Proposed Settlement**

2        The Settlement Agreement contains a release of all claims that are factually supported by

3   the 3AC against defendant by the proposed class, who are defined as "all current and former

4   hourly non-exempt nuclear medicine technologists and assistants to nuclear medicine

5   technologists employed by defendant in California at any time during the class period."  (ECF

6   No. 61-2 at ¶¶ 5, 20, 36 (the Settlement Agreement).)  The Agreement sets the PAGA period

7   from January 20, 2019, through the date of the court's preliminary approval.  (Id. at ¶ 16.)  The

8   proposed class consists of approximately "82 class members who worked approximately 6,485

9   Work Weeks during the Class Period," and is divided into two subclasses:  (a) non-exempt

10  nuclear medicine technologists employed by defendant in California at any time during the class

11  period (the "Technologist Subclass"); and (b) assistants to nuclear medicine technologists

12  employed by defendant in California at any time during the class period (The "Assistant

13  Subclass").[2]  (Id. at ¶ 5.)  The parties have estimated there are 42 potential members of the

14  Technologist Subclass and 40 potential members of the Assistant Subclass.  (ECF No. 41-4 at 7.)

15  After the court noted a mismatch between the Rule 23 class and the PAGA Members (ECF No.

16  54), the parties modified the terms of the Agreement so that the individuals in the Rule 23 Class

17  are the same as those affected by the PAGA settlement.  (See ECF No. 61 at 3-4.)

18        In return for the release of claims from these individuals, the Settlement Agreement

19  provides for a non-reversionary gross settlement amount of $768,000.  (ECF No. 61-2 at ¶ 27.)

20  This amount is to be increased by 2% on a proportional basis if the actual number of work weeks

21  _____

22  [2] According to the operative 3AC and counsel's declaration, the claims were originally raised by
    plaintiff on behalf of a class of around 30 of defendant's employees, but in discovery the parties
23  came to discover the claims extended to a larger group.  (See ECF No. 26 at ¶ 52; ECF No. 41-1
    at ¶¶ 18-27 (counsel's description of the enlargement of the class based on what was revealed in
24  discovery).)

25        The subsequent division of the class into these two subclasses does not materially alter the
    settlement terms, as the claims asserted by each subclass are the same, require no additional
26  discovery and cause no prejudice.  In fact, the only reason for the partition is so the settlement
    funds can be allocated based on the class members' pay rates.  See, e.g., In re TFT-LCD (Flat
27  Panel) Antitrust Litigation, 267 F.R.D. 583, 591 (N.D. Cal. 2010) (finding no need for an
    amended complaint where the proposed modifications to the class for class certification purposes
28  were "minor, require no additional discovery, and cause no prejudice to defendants.").

worked by the class members is 10% greater than the estimated amount (i.e. if there are 7,263.2
work weeks, or 12% more work weeks than estimated, the gross settlement amount would
increase by $16,000, or 2%).  (Id. at ¶ 28.)  This amount represents approximately a little over
one-sixth of the estimated, hypothetical maximum damages ($4,462,420.26).  (ECF No. 61 at 6-
8.)  In arguing the settlement is fair, counsel notes the weaknesses in plaintiff's case, including
the need to rely on "unaided memories" and lack of documentation for the rest periods,
differences between plaintiff's diligent recordkeeping and that of less-diligent class members, the
low value of the cellphone use policy, and the possibility that some employees received some but
not all meal breaks.  (Id.)

The Settlement Agreement proposes deducting from the $768,000 gross settlement
amount the following:

(a) A class representative incentive award of up to $10,000;

(b) Class counsel's attorney's fees not to exceed 25% of the total settlement amount;

(c) Class counsel's litigation costs not to exceed $20,000;

(d) Settlement administrator costs not to exceed $15,000; and

(e) A PAGA payment of $24,000 to be paid to the Labor Workforce and Development
Agency ("LWDA"), out of an overall PAGA award of $32,000.[3]

(ECF No. 61-2 at ¶¶ 3, 7, 24; see also ECF No. 61-1 at ¶ 4 (decl. Watson, submitting that the
forthcoming attorneys' fee motion will not request more than 25% of the gross settlement
amount).)  The above deductions, if fully approved and assuming no proportional growth, would
yield a Net Settlement Fund of $507,000.  (See id.)

As proposed, the Net Settlement Fund would be distributed across all class members who
do not opt out of the settlement, with 70% of the Net Fund being allocated to the Technologist
Subclass and 30% allocated to the Assistant Subclass (given the disparity of pay between the two

---

[3]  As discussed below, PAGA requires that 75% of PAGA penalties recovered go to the LWDA
and 25% to the aggrieved employees.  Cal. Lab. Code § 2699(i).  Accordingly, the Settlement
Agreement dictates that the remaining $8,000 (25% of $32,000) will be paid to the Net Settlement
Fund. (ECF No. 61-2 at ¶ 17.)
Plaintiff states she provided the LWDA with written notice of the suit in January of 2020
at the inception of this case, but the LWDA did not respond.  (ECF No. 65 at ¶ 101.)

1    subclasses), on a pro-rata basis, as determined by the number of workweeks they worked as class

2    members during the class period compared to the total number of workweeks.  (Id. at ¶ 34.)  The

3    parties estimate the proposed settlement would result in an average recovery of $11,000 for each

4    technologist and $3,000 for each assistant (which of course will vary depending on the number of

5    workweeks each class member actually worked).  (See ECF No. 61 at 9.)

6        The Settlement Agreement requires defendant to submit the class data list to the

7    Settlement Administrator within 30 days of the court's preliminary approval, then 10 days

8    thereafter for the Administrator to confirm the class members' addresses and mail out the Notice

9    of Class Action Settlement.  (ECF No. 61-2 at ¶¶ 38-40.)  The Agreement then allows 45 days

10   from the mailing of the Notice proposed for class members to:  (a) do nothing and receive a

11   payment, (b) request to be excluded from the settlement ("opt out"), (c) object to the terms of the

12   settlement, or (d) dispute their dates of employment and estimated recovery amount listed.  (Id. at

13   ¶ 23; ECF No. 61-3 at 1-2 (the Class Notice).)  Those who opt out will retain their right to sue but

14   receive no payment under the settlement; those who remain in would ultimately receive their

15   "Individual Settlement Payment" by check.  (ECF No. 61-2 at ¶¶ 20-22, 36, 46; ECF No. 61-3.)

16   The Settlement Agreement grants class members the right to opt out of or object to the Rule 23

17   settlement, but properly notes the PAGA settlement is effective with no such option.  (ECF No.

18   61-2 at ¶ 36.)  Additionally, as noted, class members may dispute their dates of employment or

19   estimated workweeks.  (Id. at ¶ 41.)

20   **II.    DISCUSSION**

21       Plaintiff seeks:  (A) provisional certification of the Rule 23 settlement class, her

22   appointment as class representative, and appointment of her counsel as class counsel;

23   (B) preliminary approval of the Rule 23 class action settlement; (C) approval of the PAGA

24   settlement; and (D) appointment of the settlement administrator, approval of the notice to class

25   members, and setting of a fairness hearing.  (ECF Nos. 40, 61.)  Defendant, as a party to the

26   Agreement, does not oppose.  (ECF No. 44.)

27   ///

28   ///

5

1          **<u>Legal Standards – Rule 23 Class Settlements and PAGA Settlements</u>**

2          When parties seek approval of a class settlement before class certification, courts must

3   analyze "both the propriety of the certification and the fairness of the settlement." <u>Staton v.</u>

4   <u>Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003); <u>see</u> Fed. R. Civ. P. 23(e) ("The claims, issues, or

5   defenses of a certified class—or a class proposed to be certified for purposes of settlement—may

6   be settled, voluntarily dismissed, or compromised only with the court's approval."). Accordingly,

7   the court considers whether the proposed class meets the certification requirements, and whether

8   the proposed settlement is "fundamentally fair, adequate, and reasonable." <u>Staton</u>, 327 F.3d at

9   952. At the preliminary approval stage, the court considers the likelihood that it will ultimately

10  approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The final approval stage comes

11  after notice to and feedback from the class and a fairness hearing. Fed. R. Civ. P. 23(e)(2).

12         Although this action largely consists of class claims, it also includes a claim for penalties

13  under the California Labor Code's Private Attorneys General Act ("PAGA"). PAGA claims are

14  distinct from class claims. <u>See</u> <u>Kim v. Reins Int'l Cal., Inc.</u>, 9 Cal. 5th 73, 86-87 (2020) ("[A]

15  representative action under PAGA is not a class action[,]" but rather one "on behalf of the

16  government.") (quotations omitted). This is because "[p]laintiffs may bring a PAGA claim <u>only</u>

17  as the state's designated proxy, suing on behalf of <u>all</u> affected employees." <u>Id.</u> (emphases in

18  original); <u>see</u> <u>Viking River Cruises, Inc. v. Moriana</u>, 142 S. Ct. 1906, 1914 (2022) (explaining

19  how California law characterizes PAGA as creating a "type of qui tam action" with the

20  representative private plaintiff acting in place of the government (quoting <u>Iskanian v. CLS</u>

21  <u>Transp. Los Angeles, LLC</u>, 59 Cal. 4th 348, 382 (2014)). Because a PAGA claim is not "a

22  collection of individual claims for relief" like a class action, <u>Canela v. Costco Wholesale Corp.</u>,

23  971 F.3d 845, 855 (9th Cir. 2020) (discussing <u>Kim</u>'s holding), PAGA claims "need not satisfy

24  Rule 23 class certification requirements," <u>Hamilton v. Wal-Mart Stores, Inc.</u>, 39 F.4th 575, 583

25  (9th Cir. 2022). However, like class action settlements, PAGA <u>settlements</u> must be approved by

26  the court. Cal. Lab. Code § 2699(l)(2). Courts in this circuit apply "a Rule 23-like standard,"

27  asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and

28  adequate." <u>Haralson v. U.S. Aviation Servs. Corp.</u>, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

1     **<u>Analysis</u>**

2     **A. Provisional Class Certification under Rule 23(a), (b)(3), and (g)**

3         Rule 23 establishes five prerequisites for any class certification:  (1) numerosity;

4 (2) commonality; (3) typicality; (4) adequacy of representation; and (5) one of the three options

5 under Rule 23(b).  <u>See</u> Fed. R. Civ. P. 23(a) and (b); <u>Leyva v. Medline Indus. Inc.</u>, 716 F.3d 510,

6 512 (9th Cir. 2013).  Relevant here, Rule 23(b)(3) states that class actions may be maintained

7 only if "questions of law or fact common to class members predominate over any questions

8 affecting only individual members" and if "a class action is superior to other available methods

9 for fairly and efficiently adjudicating the controversy."  If the class is certified, the court must

10 appoint class counsel and a class representative.  Fed. R. Civ. P. 23(e), (g).

11         To reiterate, plaintiff seeks provisional certification of a class defined as "all current and

12 former hourly non-exempt nuclear medicine technologists and assistants to nuclear medicine

13 technologists employed by defendant in California at any time [during the class period]."  (ECF

14 No. 61-2 at ¶¶ 5-6.)

15     **1. Numerosity**

16         For class certification, the class must be "so numerous that joinder of all members is

17 impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of

18 the specific facts of each case and imposes no absolute limitations."  <u>Gen. Tel. Co. of Nw., Inc. v.</u>

19 <u>EEOC</u>, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class

20 comprises as few as 39 members, where joining all class members would serve only to impose

21 financial burdens and clog the court's docket.  <u>See</u> <u>Murillo v. Pac. Gas & Elec. Co.</u>, 266 F.R.D.

22 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit guidance regarding

23 numerosity and listing cases).

24         Plaintiff estimates that there are approximately 82 members in the putative class.  (ECF

25 No. 41-4 at 7.)  Even at this smaller number, maintaining 82 individual suits based on the same

26 claims and facts would be impractical.  <u>See, e.g.</u>, <u>Jordan v. Cty. of Los Angeles</u>, 669 F.2d 1311,

27 1319, n.10 (9th Cir. 1982) (noting that numerosity has been satisfied for class of fewer than 100

28 members) (vacated on other grounds).  Thus, plaintiff satisfies the numerosity requirement.

1       **2. Commonality**

2           Rule 23 class certification requires "questions of law or fact common to the class." Fed.

3   R. Civ. P. 23(a)(2).  To satisfy commonality, the class representative must demonstrate the

4   litigation will "depend upon a common contention . . . capable of class-wide resolution—which

5   means that determination of its truth or falsity will resolve an issue that is central to the validity of

6   each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

7   "So long as there is even a single common question, a would-be class can satisfy the commonality

8   requirement of Rule 23(a)(2)." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir.

9   2013) (quoting Wal–Mart, 564 U.S. at 350).

10          Here, plaintiff contends that common questions of fact and law exist based on whether

11  defendant had a policy and practice of requiring plaintiff and class members to involuntarily

12  forfeit meal and rest breaks, failing to pay employees for these missed breaks; failing to pay

13  overtime; failing to provide accurate and timely wage statements; and failing to pay all wages

14  owed to class members.  (ECF No. 41-1 at ¶ 37; see also ECF Nos. 61-1 at ¶ 7; ECF No. 65 at

15  ¶ 57.)  Because the above questions would form the basis of each class member's claims, plaintiff

16  satisfies the commonality requirement. See Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165–66

17  (9th Cir. 2014) (finding commonality satisfied when class action claims raised common question

18  of whether the employer had practices or unofficial policies that violated California Labor Code

19  provisions).  "Even if individual members of the class will be entitled to different amounts of

20  damages because, for instance, they were denied fewer meal and rest breaks than other

21  employees, 'the presence of individual damages cannot, by itself, defeat class certification.'"

22  Mejia v. Walgreen Co., 2020 WL 6887749, at *4 (E.D. Cal. Nov. 24, 2020) (quoting Leyva, 716

23  F.3d at 513 and Wal-Mart, 564 U.S. at 362, and finding commonality satisfied where the alleged

24  labor code violations were based on the defendant's policies).

25      **3. Typicality**

26          Typicality is satisfied when "the claims or defenses of the representative parties are

27  typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality test asks

28  "whether other members have the same or similar injury, whether the action is based on conduct

which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement is a permissive standard.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) ("[Class] representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.") (overruled on other grounds)

Here, plaintiff's claims are typical of the class because she was a non-exempt employee who, at a minimum, was not paid overtime at the required rate despite allegedly working such hours, and was not compensated for involuntarily forfeited meal and rest breaks and received inaccurate pay stubs.  (ECF No. 65 at ¶ 58.)  Plaintiff's claims are reasonably co-extensive of the other class members, and so the typicality requirement is satisfied.

### 4. Adequacy of Representation

To satisfy Rule 23(a)'s final requirement, the representative parties must show they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  When analyzing the adequacy of the representation, the court must address two questions:  "[a] do the named plaintiffs and their counsel have any conflicts of interest with other class members and [b] will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020 (citation omitted).  Certification will be denied in instances of "actual fraud, overreaching, or collusion." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

#### a. Conflicts of Interest

Based on the declarations, it does not appear that plaintiff or her counsel have any interests that conflict with the class other than the fee award.  (ECF Nos. 41-3 (decl. Ranger); 61-1 (decl. Watson).)  See Staton, 327 F.3d at 975-76 (discussing the propriety of incentive awards).  Counsels' fee is discussed in Section B.3.c below.

As to plaintiff's incentive award, these are "fairly typical in class action cases," are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

1    willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948,

2    958-59 (9th Cir. 2009).  Nevertheless, courts "must be vigilant in scrutinizing all incentive awards

3    to determine whether they destroy the adequacy of the class representatives." Radcliffe v.

4    Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In assessing the

5    reasonableness of incentive awards, the court considers "the actions the plaintiff has taken to

6    protect the interests of the class, the degree to which the class has benefitted from those actions"

7    and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327

8    F.3d at 977 (citation omitted).  The court must balance "the number of named plaintiffs receiving

9    incentive payments, the proportion of the payments relative to the settlement amount, and the size

10    of each payment." Id.

11        The Settlement Agreement proposes an incentive award up to $10,000 for the sole named

12    plaintiff in this action, Ms. Ranger, which amounts to 1.3% of the gross settlement amount of

13    $768,000.  (ECF No. 61-2 at ¶¶ 7, 10.)  Percentagewise, such a class representative award is

14    higher than has been granted in other cases.  See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc.,

15    2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that

16    incentive award over 1% of settlement fund, without justification, was excessive); see also

17    Ontiveros v. Zamora, 303 F.R.D. 356, 365 (E.D. Cal. 2014) (noting incentive awards equaling

18    even 1% of larger settlements are generally found to be "unusually high"); with Bellinghausen v.

19    Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citing cases demonstrating that

20    incentive awards typically range from $2,000 to $10,000.  Given that the parties have not

21    submitted exact figures of what each class member might obtain (instead relying on a formula for

22    the claims administrator to use in determining each class member's award), it is difficult to

23    determine how much larger of an award this would be in comparison to what each class member

24    might receive.  In plaintiff's favor, the court notes the significant time plaintiff invested in

25    participating in the case (as opposed to the absent class members).  This will be considered at the

26    final settlement step.  For purposes of provisional certification of the class, the court does not find

27    the proposed incentive award so disproportionate that it necessarily creates a conflict of interest

28    or renders plaintiff an inadequate representative.

1
    **b. Vigorous Prosecution**

2
       As to the second aspect of the adequacy inquiry, plaintiff's attorneys at the Arnold Firm

3
have extensive experience in litigating complex class action cases, including settling wage and

4
hour class actions across the country.  (ECF Nos. 41-2 (decl. Stralen); 61-1 (decl. Watson).)  This

5
experience suggests that counsel can effectively advocate for the proposed class.  In the absence

6
of any further evidence of conflicts, the court finds plaintiff's counsel likely to continue

7
vigorously prosecuting this lawsuit on behalf of the class.

8
    **5. Rule 23(b)(3) Requirements**

9
       Plaintiff invokes Rule 23(b)(3), which requires a finding "that the questions of law or fact

10
common to class members predominate over any questions affecting only individual members,

11
and that a class action is superior to other available methods for fairly and efficiently adjudicating

12
the controversy."  Fed. R. Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more demanding"

13
than that of Rule 23(a).  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 623-24 (1997)).

14
Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication

15
by representation."  <u>Id.</u> at 623.  Superiority tests whether the class mechanism is better than other

16
available method, mainly by reducing litigation costs and promoting greater efficiency.  <u>Id.</u> at

17
620.  In a class action settlement, the court need not address whether the case, if tried, would

18
present issues of manageability under Rule 23(b)(3)(D).  <u>Id.</u> at 593.

19
       Here, common questions of law and fact predominate over questions affecting individual

20
members because plaintiff and all class members were allegedly subject to the same policies and

21
practices regarding timekeeping and overtime payments, meal and rest breaks, and business

22
expense reimbursements.  When a class action challenges a defendant's uniform policies, courts

23
generally find the predominance requirement satisfied.  <u>See</u> <u>Vaquero v. Ashley Furniture Indus.,</u>

24
<u>Inc.</u>, 824 F.3d 1150, 1154-55 (9th Cir. 2016); <u>see also, e.g.</u>, <u>Palacios v. Penny Newman Grain,</u>

25
<u>Inc.</u>, 2015 WL 4078135, at *6 (E.D. Cal. July 6, 2015) (finding predominance where defendants

26
uniformly failed to properly calculate wages and overtime, provide reimbursements, account for

27
meal and rest periods, and noting there will be individual issues apart from calculating individual

28
damages).

Because defendant's liability would turn on a review of its uniform policies and practices, concentrating litigation of the issues in one lawsuit would be superior to individual actions.  See Amchem, 521 U.S. at 620.  Further, when class members' individual recoveries might be less in separate suits, the class members' individual interests generally favor certification rather than individual prosecution.  Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001); see Fed. R. Civ. P. 23(b)(3)(A) (one factor in superiority determination is class members' interests in bringing separate actions); Amchem, 521 U.S. at 617 (Rule 23(b)(3) serves to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"); see Fed. R. Civ. P. 23(b)(3)(B) (superiority determination also considers "extent and nature of any litigation concerning the controversy already begun by or against class members").[4]

Thus, common questions predominate, and a class action is a superior vehicle for adjudicating the dispute.

### 6.   Appointment of Class Counsel & Class Representative

In sum, because the court finds Rule 23(a)'s and Rule 23(b)(3)'s requirements are met, the class is provisionally certified for settlement purposes.  Additionally, the court provisionally appoints plaintiff Monica Ranger as class representative.  Plaintiff's interests align with those of the unnamed class members, and (as discussed above) there do not appear to be any conflicts of interest sufficient to render her an inappropriate class representative.

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  When appointing class counsel, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

---

[4]  The other two factors for superiority (desirability of concentrating litigation in this forum, and difficulty of managing the class action, Fed. R. Civ. P. 23(b)(3)(C) & (D)) do not apply when the action settles before class certification.  See Mejia, 2020 WL 6887749, at *6.

1    Plaintiff moves for an appointment of John Stralen and Joshua H. Watson of Clayeo C.

2    Arnold as class counsel.[5]  Plaintiff states the Clayeo Firm has been the primary counsel for this

3    litigation, meeting with her, negotiating the settlement, and taking other actions.  (ECF No. 41-4

4    at 17-18.)  The court concludes that provisional designation of John Stralen and Joshua Watson is

5    appropriate.

6        As noted above, counsel are experienced in litigating class action cases, including wage

7    and hour class actions, and they appear to have advanced plaintiff's position, investigated the

8    claims thoroughly, and engaged in discovery prior to settlement.  (See ECF Nos. 41-2 and 61-1.)

9    Based on their previous efforts, the court anticipates counsel will continue to devote appropriate

10   resources to represent the class.

11   **B.  Preliminary Approval of Proposed Settlement**

12       Settlement of a class action must be "fair, reasonable, and adequate."  Fed. R. Civ.

13   P. 23(e)(2).  Preliminary approval is appropriate when "the court will likely be able to" give final

14   approval.  Fed. R. Civ. P. 23(e)(1)(B).  Any fairness determination requires the court to "focus[ ]

15   primarily upon whether the particular aspects of the decree that directly lend themselves to

16   pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees

17   and the distribution of any relief, particularly monetary relief, among class members—strictly

18   comport with substantive and procedural standards designed to protect the interests of class

19   members."  Staton, 327 F.3d at 960.  Courts evaluate the "settlement as a whole, rather than

20   assessing its individual components."  Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir.

21   2012).  Because the parties negotiated this settlement before any class was certified, the court

22   applies a "more probing inquiry" to ensure the fairness of the proposed settlement.  Roes, 1-2 v.

23   SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotations omitted).

24   ///

25   _____

     [5] Plaintiff's original motion sought appointment of attorney Darren Guez as class counsel in
26   addition to attorneys at the Clayeo firm.  (See ECF No. 41.)  After the court noted significant
     issues with the prior motion, the parties submitted a revised settlement agreement and no longer
27   request attorney Guez be appointed as class counsel.  (See, e.g., ECF No. 63 at 3 (the Proposed
     Order, omitting Guez from the class counsel request).)  The court presumes the parties have come
28   to this alteration by agreement and does not comment further.

In reviewing whether the proposed settlement is fair, reasonable, and accurate, Rule 23 requires the court to consider whether:  (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

For the following reasons, the Settlement Agreement appears fair, reasonable, and adequate, and so is preliminarily approved under Rule 23(e) as to the class claims

### 1.  Adequacy of Representation

The first factor, whether "the class representatives and class counsel have adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A), is redundant of Rule 23(a)(4).  Mejia, 2020 WL 6887749, at *9 (quotation omitted).  The court preliminarily finds that the class representatives and class counsel adequately represent the class for purposes of Rule 23(e)(2)(A).

### 2.  Arm's Length Negotiation

The second factor requires the court to consider whether the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  The proposed settlement is the product of months of negotiations between the parties after the exchange of sufficient discovery.  (ECF Nos. 41-1; 41-2; 61-1.)  Thus, the court preliminary finds that this factor is satisfied.  See, e.g., Chambers v. Whirlpool Corp., 980 F.3d 645, 669 (9th Cir. 2020) ("The district court . . . correctly determined there was no collusion because," among other things, "the parties settled via arm's length negotiations . . . ."); Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties").

### 3.  Adequacy of Relief Provided to the Class

The adequacy of relief determination requires consideration of four sub-factors:

    i.     the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

    iv.   any agreement required to be identified under Rule 23(e)(3).

14

See Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).  The amount offered in the proposed settlement agreement is generally the most important consideration of any class settlement.  See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

> ### i.   Costs, risks, and delay vs. settlement amount and scope of released claims

In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.  See Rodriguez, 563 F.3d at 964. Here, the parties agreed to settle this case for a non-reversionary sum of $768,000.  (ECF No. 61-2, ¶ 10.)  After deductions for an incentive award and attorneys' fees (assuming full approval), as well as litigation costs, settlement administrator fees, and the PAGA payment to the LWDA, the court calculates a Net Settlement Fund of $507,000.  (See ECF No. 61-2 at ¶¶ 3, 7, 24; see also ECF No. 61-1 at ¶ 4.)  This amount is to be increased by 2% on a proportional basis if the actual number of work weeks worked by the class members is 10% greater than the estimated amount (i.e. if there are 7,263.2 work weeks, or 12% more work weeks than estimated, the gross settlement amount would increase by $16,000, or 2%).  (ECF No. 61-2 at ¶ 28.)  The Agreement allocates 70% of the Net Fund for the Technologist Subclass and 30% for the Assistant Subclass (due to the general pay disparity between the two subclasses).  Given the parties' estimates of 42 Technologists and 40 Assistants, the parties estimate the average amount each Technologist would receive is around $11,700, while each Assistant would receive around $3,000 (this, of course, is based on an equal distribution, but each class member is slated to receive an amount proportional to the number of weeks each worked during the class period).  (See ECF No. 61 at 9.)

This amount represents approximately a little over one-sixth of the estimated hypothetical maximum damages ($4,462,420.26).  (ECF No. 61 at 6-8.)  However, the court concurs with counsel's analysis concerning the weaknesses in plaintiff's case, which includes not only the general uncertainties with litigating a case to trial, but also the need to rely on "unaided memories" and lack of documentation for the rest periods, differences between plaintiff's diligent recordkeeping and that of less-diligent class members, the low value of the cellphone use policy,

and the possibility that some employees did receive some but not all meal breaks.  (Id.)  The

settlement amount results in a recovery that is in range of settlements that have been approved by

California courts.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458-59 (9th Cir.

2000) (affirming a settlement of one-sixth the potential recovery for weak and risky case);

O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1129 (N.D. Cal. 2016) (noting that 10% of

the verdict value of non-PAGA claims is generally considered "the low end of reasonable

recovery.").

        The court also finds the settlement amount to be fair and reasonable in light of what the

class "actually gave up by settling."  Campbell v. Facebook, Inc., 951 F.3d 1106, 1123 (9th Cir.

2020).  The Agreement provides that each class member, by accepting their portion of the

settlement and not opting out, will release defendant from:

> [A]ll claims and/or causes of action arising from or related to the
> Lawsuit under any federal, state, or local law, regulation, wage order,
> or administrative order that were raised in the Lawsuit and that could
> have been raised in the Lawsuit based on the allegations therein, and
> which arise out of or directly or indirectly relate to such allegations,
> whether known or unknown, including but not limited to the alleged
> failure to properly classify Class Members, failure to pay wages,
> including minimum and overtime wages, failure to reimburse for
> expenses, failure to provide compliant meal and rest breaks, failure
> to pay meal and rest period premiums/penalties, failure to timely pay
> all earned wages during and at the completion of employment, and
> failure to furnish complete and accurate itemized wage statements.
> Participating Class Members' Released Claims include claims for
> restitution and other equitable relief under Business and Professions
> Code sections 17200, et seq., conversion, restitution of any nature
> that arise from the factual predicates alleged or could have been
> alleged in the Lawsuits, statutory penalties, civil penalties, interest,
> liquidated damages, reasonable attorney's fees and costs, and any
> other claims that are raised or could have been raised in the Lawsuits
> through the earliest of January 22, 2022 (i.e., 120-days from the
> Parties' endorsement of the Memorandum of Understanding on
> September 24, 2021) . . . . [6]

(ECF No. 61-2 at ¶ 20.)

---

[6] The agreement carves out " any claim which may arise or may have arisen at any time in favor
of Plaintiff Monica Ranger and against Defendant for unlawful retaliation or unlawful
discrimination, including any claim pursuant to California Labor Code §§ 98.6 and 98.7 and
related law."  (ECF No. 61-2 at ¶ 20.)  This carveout does not affect the propriety of the class
action settlement, and the court offers no perspective on any such claims.

16

This release language is permissibly pinned to the facts and allegations stated in the 3AC, and so is sufficient to allow any future potential litigant to raise (with another court) the scope of the release, so all can determine the preclusive effect of the Agreement on whatever facts present themselves.  See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (noting class action settlement agreements cannot release claims of absent class members that are unrelated to the factual allegations of the class complaint).  Thus, the court finds the scope of release to be fair and reasonable when compared to the amount of the settlement.  Campbell, 951 F.3d at 1123.

Finally, though the parties have engaged in discovery allowing them to broadly evaluate the case's merits and defendant's potential maximum exposure, the court recognizes that significant discovery still lies ahead.  When coupled with this court's heavily impacted caseload and the risk of further delay in a post-trial appeal before the Ninth Circuit, it is clear that these significant delays would persist if the parties decided to take this case to trial.

Thus, the costs, risks, and delay of any potential trial weigh in favor of settlement

### ii.  Effectiveness of proposed method of distributing relief

Under the Settlement Agreement, class members will not have to submit claims to receive payment; instead, they will be identified through defendant's employment records, the settlement administrator will search for class members' most recent address through searches and by skip tracing, and class members will receive the settlement payment by mail unless they opt out of the settlement.  (ECF No. 61-2 at ¶¶ 38-43.)  Each class member's share will be calculated based on how many workweeks they worked during the class period, which can be readily determined by defendant's employment records and which will be stated on the Class Notice; class members will also have an opportunity to challenge errors relating to the number of workweeks calculated on the Notice.  (See Id.)  This method of distributing relief is "simple and effective."  Loreto v. Gen. Dynamics Info. Tech., Inc., 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021).

### iii.  Terms of proposed award of attorney's fees

The Agreement provides that class counsel will be allowed to request attorney's fees up to 33.33% percent (one-third) of the gross settlement amount.  (ECF No. 61-2 at ¶ 3.)  However, counsel indicates in his declaration that he does not intend to request fees in excess of 25% of the

17

fund.  (ECF No. 61-1 at ¶ 4.)  In settlements that produce a common fund, courts may use either the lodestar method or percentage-of-recovery method to determine the reasonableness of attorney's fees.  In re Bluetooth, 654 F.3d at 942.  Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."  Id.  However, a departure may be justified based on "special circumstances."  Id.

Given that class counsel eventually will move separately for attorney's fees and costs under Rule 23(h), the court need not determine at the preliminary approval stage whether a 33% award is reasonable—especially in light of counsel's declaration to seek only up to 25% of the fund.[7]  For now, counsel's anticipated request is not so disproportionate to the relief provided to the class that it "calls into question the fairness of the proposed settlement."  Pokorny v. Quixtar Inc., 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).  In the forthcoming Rule 23(h) motion, counsel shall brief the fee application using the lodestar method as a cross-check, which will assist the court in confirming the reasonableness of the requested fees.  For this cross check, counsel shall note the differences in the prevailing rates between the Eastern District of California and other districts when submitting their motion.[8]

### iv.  Agreements made in connection with the proposal

Plaintiff identifies no other agreements made in connection with the proposed settlement.  See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  This weighs in favor of approving the settlement.

---

[7] The court appreciates counsel's candor and position that provides more relief to the class. Should counsel's position change between now and the filing of the Rule 23(h) motion, counsel will be expected to fully substantiate the justification for an attorney's fees award that exceeds the 25% benchmark.  See In re Bluetooth, 654 F.3d at 942 (stating that district courts should "award only that amount of fees that is reasonable in relation to the results obtained").  Counsel shall address factors such as "(1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."  Mejia, 2020 WL 6887749, at *10 (quotation omitted).

[8]  The Agreement is not contingent upon the court awarding any particular amount of attorney's fees, and any requested amount not granted will return to the common fund for distribution to participating class members.

1          **4.   Equitable Treatment of Class Members**

2          The fourth factor addresses whether the proposed settlement agreement "treats class

3   members equitably relative to each other."  See Fed. R. Civ. P. 23(e)(2)(D).  This inquiry

4   considers both equity across sub-categories, or segments, of the class, and equity between class

5   representatives and unnamed class members.

6          The Settlement Agreement does discriminate between the two subclasses, but for a

7   logically permissible reason.  Counsel has noted the pay disparity between the Technologist

8   subclass and the Assistant subclass, and this disparity generally aligns with the 70%/30% split of

9   the Net Settlement Fund between the classes.  As described in the Settlement Agreement, the

10  parties have devised a formula that portions each class member's recovery based on the number

11  of total weeks worked in both the Rule 23 and PAGA periods.  (ECF No. 61-2 at ¶¶ 5¶¶ 33-34.)

12         As to equitable treatment between the class representative and the class members, the

13  court incorporates its above discussion regarding the incentive award.  Given that the court retains

14  discretion to award a lower amount depending on the briefing provided at the final approval

15  stage, this is not a source of impermissible inequity.

16  **C.  Settlement of PAGA Penalties Claim**

17         The 3AC's Seventh Cause of Action asserts a claim for PAGA penalties, on behalf of

18  plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code

19  violations asserted.  (ECF No. 65 at 12-15.)  As discussed at the outset, PAGA claims and their

20  settlement are fundamentally distinct from Rule 23 class claims.  See Hamilton, 39 F.4th at 583

21  ("Rule 23 class actions and PAGA actions are so conceptually distinct that class action precepts

22  generally have little salience for PAGA actions."); Canela, 971 F.3d at 852 (noting "the different

23  remedial schemes that exist in Rule 23 class actions and PAGA suits").

24         Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

25  code violations on behalf of herself and other current or former employees.  Cal. Lab. Code

26  § 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on

27  behalf of all affected employees."  Kim, 9 Cal. 5th at 87 (emphasis in original).  Because a PAGA

28  plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment

19

in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a

judgment in an action brought by the government." Arias v. Superior Ct., 46 Cal. 4th 969, 986

(2009).  "Unlike a class action, there is no mechanism for opting out of a judgment entered on a

PAGA claim." Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (4th Dist.

2021) (internal quotes omitted).  Thus, a PAGA plaintiff owes a duty both to their "fellow

aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to

the public at large because "they act, as the statute's name suggests, as a private attorney

general." O'Connor, 201 F. Supp. 3d at 1133–34.

      Under PAGA's remedial scheme, civil penalties recovered are distributed between "the

aggrieved employees" (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement

of PAGA claims must be approved by the court; and the proposed settlement must also be sent to

the LWDA at the same time it is submitted to the court.  Cal. Lab. Code § 2699(*l*)(2).

      Although the court does not evaluate the settlement of PAGA claims under the Rule 23

criteria, it must still inquire into the fairness of the PAGA settlement.  "[I]n reviewing a

settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine

both aspects of the settlement." O'Connor, 201 F. Supp. 3d at 1133 (emphasis in original).

Based on the best guidance at hand—from the LWDA's input in O'Connor, in the absence of a

definitive governing standard—district courts typically apply "a Rule 23-like standard" asking

whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."

Haralson, 383 F. Supp. 3d at 972; see also, e.g., Mondrian v. Trius Trucking, Inc., 2022 WL

2306963, at *7 (E.D. Cal. June 27, 2022) (noting lack of binding standard for approving PAGA

settlements and adopting "fundamentally fair, reasonable, and adequate" standard based on

LWDA's O'Connor commentary).

      "While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the

adequacy of compensation to the class as well as the adequacy of the settlement in view of the

purposes and policies of PAGA.  In doing so, the court may apply a sliding scale." O'Connor,

201 F. Supp. 3d at 1134 (cleaned up).  "For example, if the settlement for the Rule 23 class is

robust, the purposes of PAGA may be concurrently fulfilled." Id.  Non-monetary relief provided

1    through the settlement may also satisfy PAGA's interests in enforcement and deterrence.  Id. at

2    1134-35.  Conversely, in cases where a settlement provides "relatively modest" amounts in

3    settlement of the class claims compared to their verdict value, and there is no non-monetary relief

4    provided, the PAGA aspect of the settlement must stand on its own to "substantially vindicate"

5    PAGA's policy interests.  Id. at 1135.

6           The Settlement Agreement provides for $32,000 in PAGA penalties, out of the gross

7    settlement amount of $768,000.  (ECF No. 61-2, ¶¶ 10, 17.)  Class counsel estimates the

8    maximum PAGA penalties at trial could be just over $2 million—if all penalties for all claims

9    were awarded at the maximum value.  (ECF No. 61-1 at ¶¶ 8-9.)  However, the court concurs

10   with counsel's assessment regarding the uncertainty of the case.  See, e.g., Carrington v.

11   Starbucks Corp., 30 Cal. App. 5th 504, 529 (2018) (noting the trial court's discretionary authority

12   to award lesser penalties where defendant exercised a good faith attempt to comply with the

13   Labor Code and affirming the trial court's award of $5 per violation).  Given the uncertainties in

14   the case and the robustness of the average individual payments to class members, the court is

15   persuaded that PAGA's interests are satisfied.  O'Connor, 201 F. Supp. 3d at 1134.

16          Considering the other factors from Rule 23(e)(2), the court finds the PAGA portion of the

17   settlement to be similarly fair and adequate for the PAGA members.  Though the PAGA payment

18   will be much lower than the payments under the Rule 23 settlement, this will ultimately benefit

19   the class members, as PAGA's 75%/25% allocation would only shift funds away from the class

20   members—who appear to be the same set of individuals as the PAGA members.  See Rodriguez

21   v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving

22   0.6% PAGA payment because LWDA did not object to terms of settlement).  The court also takes

23   the LWDA's decision to not comment on the settlement after being notified thereof as implicit

24   approval of the parties' agreement.  See Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at

25   *2 (S.D. Cal. Sept. 18, 2018) (taking LWDA's "acquiescence as indication that the settlement is

26   presumptively reasonable").  Finally, the parties have accounted for the distinction between Rule

27   23 opt outs and PAGA's inability to do so, as the settlement agreement and notice inform as

28   much.  Uribe v. Crown Bldg. Maint. Co., 70 Cal. App. 5th 986, 1001 (4th Dist. 2021), as

21

1  modified on denial of reh'g (Oct. 26, 2021) ("A defining feature of the class action procedure is

2  that a class member may opt out of the class if he or she does not wish to be bound by the result

3  of the suit . . . . PAGA actions do not afford the same opt out feature.") (cleaned up); Amaro, 69

4  Cal. App. 5th at 541 n.5 ("Unlike a class action, there is no mechanism for opting out of a

5  judgment entered on a PAGA claim."); Rutter, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 14-C

6  [14:134.1] ("There is no mechanism by which an aggrieved employee can 'opt out' of a PAGA

7  claim." (citation omitted)).

8          For these reasons, the court finds the settlement of the PAGA Penalties claim to be

9  fundamentally fair, reasonable, and adequate." See Haralson, 383 F. Supp. 3d at 972.

10    **D.   Settlement Administrator; Notice to Class/PAGA Members; Fairness Hearing**

11         **1.   Settlement Administrator**

12         To ultimately approve a class action settlement, a district court must ensure class members

13  were notified of the proceedings, had the opportunity to opt out or (for those who remain in the

14  settlement) object to any of the settlement's terms, and were provided the chance to appear at

15  fairness hearing.  Fed. R. Civ. P. 23(e)(1)-(5).  To effectuate these procedures, the parties have

16  agreed to retain ILYM, CPT Group, Inc to handle the notice and claim administration process.

17  (ECF No. 61-2 at ¶¶ 25, 38-48.)  The court approves.

18         **2.   Notice to Class Members**

19         For proposed settlements under Rule 23, "the court must direct notice in a reasonable

20  manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); see

21  Hanlon, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

22  under Rule 23(e).").  For settlements under Rule 23(b)(3), the court is required to:

23              [D]irect to class members the best notice that is practicable under
               the circumstances, including individual notice to all members who
24              can be identified through reasonable effort, [by] United States mail,
               electronic means, or other appropriate means, [concerning] the
25              nature of the action; the definition of the class certified; the class
               claims, issues, or defenses; that a class member may enter an
26              appearance through an attorney if the member so desires; that the
               court will exclude from the class any member who requests
27              exclusion; the time and manner for requesting exclusion; and the
               binding effect of a class judgment on members . . . .
28

Fed. R. Civ. P. 23(b)(3); see also Fed. R. Civ. P. 23(e)(4) and (5) (requiring the court provide

class members with an opportunity to be excluded from the settlement or object to the terms).  A

class action settlement notice "is satisfactory if it generally describes the terms of the settlement

in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal

quotations and citations omitted).

Here, the Class Notice generally describes the terms of the settlement and provides

contact information for the Settlement Administrator and Class Counsel should class members

have questions about the settlement.  The form allots space to notify each class member of how

many workweeks they worked and what their estimated total award will be.  (ECF No. 61-3.)

The Settlement Agreement requires defendant to submit the class data list to the

Settlement Administrator within 30 days of the court's preliminary approval, then 10 days after

for the Administrator to confirm the class members' addresses and mail out the Notice of Class

Action Settlement.  (ECF No. 61-2 at ¶¶ 38-40.)  The Agreement then allows 45 days from the

mailing of the Notice proposed for class members to:  (a) do nothing and receive a payment,

(b) request to be excluded from the settlement ("opt out"), (c) object to the terms of the

settlement, or (d) dispute their dates of employment and estimated recovery amount listed.  (Id. at

¶ 23; ECF No. 61-3 at 1-2.)  Those who opt out will retain their right to sue but receive no

payment under the settlement; those who remain in would ultimately receive their "Individual

Settlement Payment" by check.  (ECF No. 61-2 at ¶¶ 20-22, 36, 46; ECF No. 61-3.)  The

Settlement Agreement grants class members the right to opt out of or object to the Rule 23

settlement, but properly notes the PAGA settlement is effective with no such option.  (ECF No.

61-2 at ¶ 36.)  The Class Notice also properly distinguishes between the amounts each class

member would receive for the Rule 23 portion of the settlement and the PAGA settlement, which

allows for class members to meaningfully evaluate whether to opt out of the Rule 23 class.  (ECF

No. 61-3 at 5.)  Additionally, class members may dispute their dates of employment or estimated

workweeks.  (Id. at ¶ 41.)    Finally, a space notifying the class members of the date and time of

the court's fairness hearing is properly provided.  (ECF No. 61-3f at 8.)

The court approves of the Class Notice and schedule noted therein—with two small alterations.

- First, the court notes the inclusion of The Darren Guez Law Firm as attorney to plaintiff and the class, but as noted above, plaintiff did not request Guez to be made class counsel.   (ECF No. 61-3 at 4.)  The Class Notice should conform to the terms of the Settlement Agreement in this regard.

- Second, the opening section entitled "Your Legal Rights and Options In This Settlement" appears to inform class members they have 60 days from the date of mailing to opt out or object.  (ECF No. 61-3 at 1-2.)  However, the Settlement Agreement appears to allow only for 45 days, so the parties should ensure the deadlines on the Notice are in accordance with the Agreement.

The remainder of the notice, including the "Class Member Communication Form" (ECF No. 61-4), meets the requirements of Rule 23(b)(3) and 23(e)(4) and (5), as well as relevant case law. Churchill Vill., 561 F.3d at 575.

### 3.  Further Scheduling and the Fairness Hearing

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  In re Bluetooth, 654 F.3d at 946 (cleaned up).  To protect the rights of absent class members, Rule 23(e) requires the court approve such settlements "only after a fairness hearing . . . ."  Id.; Rule 23(e)(2).

For clarity (and given the significant delay between the filing of the motion and this order), the court now reiterates the remaining deadlines as per in the Settlement Agreement, the Class Notice, and the parties' proposed order.  The deadline for counsel's forthcoming motions and the date of the fairness hearing has been set to account for any delay in remailing notices to the class members under the procedures set forth in the Settlement Agreement.  (See ECF No. 61-2 at ¶¶ 38-46.)

///

///

///

24

| | |
|---|---|
| Deadline for defendant to provide to Settlement Administrator all required information about the putative Class Members. | ***30 Days from the date of this order.*** |
| Deadline for mailing of Class Notices by Claims Administrator. | ***10 business days after receipt of the Class Data List.*** |
| Last day for plaintiff to request final approval of the settlement agreement, attorneys' fees, and incentive award, and submit Settlement Administrator's declaration. | **October 30, 2023** |
| Fairness Hearing Date (Courtroom 25). | **December 5, 2023 9:00a.m.** |

## <u>ORDER</u>

For the above reasons, it is HEREBY ORDERED that:

1.  Plaintiff's unopposed motion for provisional class certification and preliminary approval of settlement (ECF No. 41, 61) is GRANTED;

2.  As defined above and for purposes of settlement only, the Rule 23 class is provisionally certified, plaintiff Monica Ranger is appointed class representative, and John Stralen and Joshua H. Watson of Clayeo C. Arnold are appointed class counsel;

3.  ILYM Group, Inc. is appointed Claims Administrator for this class action settlement;

4.  The Settlement Agreement (ECF No. 61-2) is preliminarily approved as fair, reasonable, and adequate;

5.  The parties' plan for notice to the class is the best notice practicable and satisfies the due process concerns of Rule 23, after small modifications are made; and

6.  The parties shall follow the deadlines set herein, as delineated by the Settlement Agreement.  A fairness hearing is scheduled for December 5, 2023, at 9:00 a.m., in Courtroom 25 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814.

Dated:  July 5, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

2