1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MONICA RANGER, on behalf of herself          No.  2:20–cv–401–KJN
      and all others similarly situated,
12                                                  FINAL APPROVAL OF CLASS ACTION
                        Plaintiff,                  AND PAGA SETTLEMENT; ORDER
13                                                  GRANTING ATTORNEYS' FEES, COSTS,
            v.                                      AND INCENTIVE AWARD
14
      SHARED IMAGING, LLC.                          (ECF Nos. 68, 69, 70.)
15
                        Defendant.
16

17          Presently pending before the court is plaintiff's unopposed motion for certification of a

18    Rule 23 class, final approval of the parties' class action and PAGA settlement, and award of fees,

19    costs, and incentive payment in this meal- and rest-break dispute.[1]  (ECF Nos. 68, 69.)  The court

20    held a fairness hearing on December 5, 2023, and no written or oral objections were asserted.

21          For the following reasons, the court CERTIFIES the settlement class; FINDS the class

22    notice was the best practicable; GRANTS approval of the class action and PAGA settlement as

23    fair, reasonable, and adequate; AWARDS class counsel their attorneys' fees; GRANTS the

24    request for reimbursement of costs and administrator expenses; and GRANTS the request for a

25    service award to the named plaintiff.

26    ///

27    _____

28    [1] The parties previously consented to the jurisdiction of a magistrate judge for all purposes, 28
      U.S.C. § 636(a), and the case was reassigned to the undersigned.  (See ECF Nos. 50, 52, 53.)

                                            1

1    I.      **BACKGROUND**

2          A. **Factual and Procedural History**

3                Plaintiff alleges in the Third Amended Complaint ("3AC") she worked for defendant

4    Shared Imaging part-time from January 2019 through the present as a nuclear medicine

5    technologist "safely conduct[ing] positron emission tomography ("PET") scans" for Kaiser health

6    physicians.  She alleges that due to the nature of the work, including defendant's setting of her

7    work schedule and her patients' inefficiencies, it was impossible for her to take meal or rest

8    breaks despite regularly working 13+ hour shifts.  She alleges defendant failed to pay overtime

9    wages and required her to use her personal phone for business purposes without compensation.

10   The 3AC raises claims for failure to pay premiums on forfeited rest and meal periods under Cal.

11   Labor Code § 226.7; failure to pay overtime wages under Wage Order No. 5-2001 § 3(A) and

12   Cal. Labor Code §§ 510 and 1194; failure to provide accurate pay stubs under Cal. Labor Code

13   § 226; failure to reimburse business expenses as required by Cal. Labor Code § 2802; and failure

14   to pay timely wages under Cal. Labor Code §§ 202 and 203.  (ECF No. 65 at 14-21.)  These

15   claims are asserted on behalf of a class defined as "all persons who are or have been employed

16   [within the class period] as nuclear medicine technologists."  (Id. at ¶ 52.)  The 3AC also asserts

17   an ancillary claim under Cal. Bus. Code § 17200 and a claim for penalties under the Private

18   Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699.  (Id. at 18-20.)

19               Plaintiff filed a case in California Superior Court in Sacramento on January 21, 2020;

20   soon thereafter defendant removed to this court on diversity jurisdiction grounds.  (ECF No. 1.)

21   In the years that followed, the parties exchanged discovery and negotiated over the size of the

22   class and damages.  (ECF No. 41-1 at ¶¶ 11-20, 23-29.)  The parties reached an agreement in

23   principle in November of 2021 and executed the longform agreement to settle the case on behalf

24   of plaintiff and the class in May of 2022.  (Id. at ¶¶ 30-31, 34.)  Plaintiff then moved for

25   provisional certification of the class and court approval of the settlement, which the court granted

26   on July 5, 2023.  (ECF Nos. 61, 65.)  On November 7, 2023, plaintiff moved for final approval of

27   the settlement and requested attorneys' fees, costs, and incentive awards.  (ECF Nos. 68, 69.)

28   Defendant did not oppose.  (ECF No. 70.)

**B. Terms of the Settlement**

The Settlement Agreement contains a release of all claims that are factually supported by the 3AC against defendant by the class, who are defined as "all current and former hourly non-exempt nuclear medicine technologists and assistants to nuclear medicine technologists employed by defendant in California at any time during the class period."  (ECF No. 61-2 at ¶¶ 5, 20, 36.)  The Agreement sets the PAGA period from January 20, 2019, through the date of the court's preliminary approval.  (Id. at ¶ 16.)  The class consists of 82 individuals, divided into two subclasses:  (a) 42 non-exempt nuclear medicine technologists employed by defendant in California ("Technologist Subclass") and (b) 40 assistants to nuclear medicine technologists employed by defendant in California ("Assistant Subclass").  (Id. at ¶ 5; ECF No. 68-2 at ¶ 15.)

In return for the release of claims, the Settlement Agreement provides for a non-reversionary gross settlement amount of $768,000.  (ECF No. 61-2 at ¶ 27.)  This amount represents approximately a little over one-sixth of the estimated, hypothetical maximum damages ($4,462,420.26).  (ECF No. 61 at 6-8.)  In arguing the settlement is fair, counsel notes the weaknesses in plaintiff's case, including the need to rely on "unaided memories" and lack of documentation for the rest periods, differences between plaintiff's diligent recordkeeping and that of less-diligent class members, the low value of the cellphone use policy, and the possibility that some employees did receive some, but not all, meal breaks.  (Id.)

Plaintiff seeks to deduct from the $768,000 gross settlement amount (as allowed by the Settlement Agreement) the following:

(a) A class representative incentive award of $10,000;

(b) Class counsels' fees of $192,000 (one-quarter of the gross amount);

(c) Class counsels' litigation costs of $1,815;

(d) Settlement Administrator costs of $8,500; and

(e) A PAGA payment of $24,000 to be paid to the Labor Workforce and Development Agency ("LWDA"), out of an overall PAGA award of $32,000.[2]

(ECF No. 61-2 at ¶¶ 3, 7, 24; see also ECF No. 61-1 at ¶ 4 (decl. Watson, submitting that the

---

[2]  PAGA requires that 75% of PAGA penalties recovered go to the LWDA and 25% to the aggrieved employees.  Cal. Lab. Code § 2699(i).

forthcoming attorneys' fee motion will not request more than 25% of the gross settlement amount); ECF Nos. 68-1 and 69-1.)  The above deductions, if fully approved, would yield a Net Settlement Fund of $531,685.  (See id.)  $8,000 of this Net Fund is to be distributed to the PAGA aggrieved workers (who are the same as the class members), with the remainder divided between the 42 technologists (70% of the fund) and 40 assistants (30% of the fund); the division for each payment is to be made on a pro-rata basis, as determined by the number of workweeks the claimants worked during the class and PAGA period.  (Id. at ¶ 34.)

**C. Notice to Class and Response**

The Settlement Agreement required defendant submit the class data list to the Settlement Administrator within 30 days of the court's preliminary approval, then 10 days for the Administrator to confirm the class members' addresses and mail out the notice of class action settlement.  (ECF No. 61-2 at ¶¶ 38-40.)  The Agreement then allowed 45 days from the mailing of the notice proposed for class members to:  (a) do nothing and receive a payment after final approval, (b) request to be excluded from the settlement ("opt out"), (c) object to the terms of the settlement, or (d) dispute their dates of employment and estimated recovery amount listed.  (Id. at ¶¶ 23, 41; ECF No. 61-3 at 1-2 (the Class Notice).)  Those who opt out were notified they retain their right to sue but would receive no payment under the settlement; those who remained in would ultimately receive their individual settlement payment by check.  (ECF No. 61-2 at ¶¶ 20-22, 36, 46; ECF No. 61-3.)  The Settlement Agreement grants class members the right to opt out of or object to the Rule 23 settlement, but properly notes the PAGA settlement is effective with no such option.  (ECF No. 61-2 at ¶ 36.)

The claims administrator mailed the approved notice to the 82 class members, and none were ultimately returned as undeliverable.  (ECF No. 68-2 at ¶¶ 8-11.)  No objections or requests for exclusion were received by the administrator, class counsel, or the court, and no class member appeared at the December 5, 2023 fairness hearing to object.  (Id. at ¶¶ 12-15.)

///

///

///

4

## II.    DISCUSSION

The parties seek:  (A) final certification of the Rule 23 settlement class, and reaffirmation of plaintiff's appointment as class representative and appointment of her counsel as class counsel; (B) final approval of the Rule 23 class action settlement; (C) final approval of the PAGA settlement; and (D) approval of the requests for attorneys' fees, counsels' costs, administrator's costs, and incentive award.  Ancillary to this, the parties seek an order to distribute payments to the class members and the State of California in accordance with the Settlement Agreement, and order dismissing this case with prejudice.  (ECF Nos. 68, 69.)

### Legal Standards – Rule 23 Class Settlements and PAGA Settlements

When parties seek approval of a class action settlement, courts must analyze "both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see Rule 23(e)[3] ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.").  Accordingly, the court considers whether the class meets the certification requirements of Rule 23 and whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 952.

Cases such as this often include a claim for penalties under the Private Attorneys General Act, which are distinct from class claims.  See Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 86-87 (2020) ("[A] representative action under PAGA is not a class action, [but rather one] on behalf of the government.") (quotations omitted).  This distinction is because "[p]laintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees."  Id. (emphases in original); see Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (explaining how California law characterizes PAGA as creating a "type of qui tam action" with the representative private plaintiff acting in place of the government) (quoting Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014) (overruled on other grounds)).  Because a PAGA claim is not "a collection of individual claims for relief" like a class action, Canela v.

---

[3] Citations to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

1   Costco Wholesale Corp., 971 F.3d 845, 855 (9th Cir. 2020) (discussing Kim's holding), PAGA

2   claims "need not satisfy Rule 23 class certification requirements," Hamilton v. Wal-Mart Stores,

3   Inc., 39 F.4th 575, 583 (9th Cir. 2022).  However, like class action settlements, PAGA

4   settlements must be approved by the court.  Cal. Lab. Code § 2699(l)(2).  Courts in this circuit

5   apply "a Rule 23-like standard," asking whether the settlement of the PAGA claims is

6   "fundamentally fair, reasonable, and adequate."  See Haralson v. U.S. Aviation Servs. Corp., 383

7   F. Supp. 3d 959, 972 (N.D. Cal. 2019).

8   　　　　**Analysis**

9   　　**A.  Class Certification under Rule 23; Class Notice, Counsel, and Representative**

10   　　　　The court previously found:  (i) the requirements of Rule 23(a) and (b)(3) had been met

11   regarding the proposed class; (ii) plaintiff's counsel was adequate to act as class counsel;

12   (iii) plaintiff was an appropriate representative for the class; and (iv) the proposed notice was the

13   best practicable under the circumstances.  (ECF No. 66.)  The court's findings on these issues have

14   not changed, and no objections to these issues were raised.  Accordingly, there is no need for the

15   court to repeat the prior analysis here.  See, e.g., Carlin v. DairyAmerica, 380 F. Supp. 3d 998,

16   1008 (E.D. Cal. 2019) ("As a preliminary matter, the court notes that it previously certified a Rule

17   23(b)(3) class.  Thus, it need not analyze whether the requirements for certification have been met

18   and may focus instead on whether the proposed settlement is fair, adequate, and reasonable.")

19   (quoting Harris v. Vector Marketing, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb. 6, 2012); In re

20   Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012) (same).

21   Thus, for the reasons stated in the previous order, the findings on class certification, counsel,

22   representative, and notice are reaffirmed and finalized for purposes of this settlement.

23   　　**B.  Final Approval of Rule 23 Class Settlement**

24   　　　　In considering whether a class action settlement is "fundamentally fair, adequate, and

25   reasonable," Staton, 327 F.3d at 952, Rule 23 requires the court to consider whether:  (1) the class

26   representatives and class counsel have adequately represented the class; (2) the proposal was

27   negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal

28   treats class members equitably relative to each other.  Rule 23(e)(2).

6

Having already completed a thorough preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. See In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) (reminding that the Ninth Circuit has declared a strong judicial policy in favor of settlement of class actions); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).  Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge [who] is exposed to the litigants and their strategies, positions, and proof."  Staton, 327 F.3d at 953.

### 1.  Adequacy of representation

To determine adequacy of representation under Rule 23(e)(2), the court may consider whether the interests of the named plaintiff are "aligned with the interests of the class members." See Cottle v. Plaid Inc., 340 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class counsel are experienced and competent" supports a conclusion that the class is adequately represented.  Id.; citing In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  This first factor is redundant of Rule 23(a)(4) and 23(g).  Mandalevy v. Bofi Holding, Inc., 2022 WL 1556160, at *6 (S.D. Cal. May 17, 2022); 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)).

Here, plaintiff's interests are aligned with those of class members, as they share a common interest in challenging the alleged wrongful wage and hour policies and seek the same relief under the same set of facts and legal theories.  (See ECF No. 65.)  Further, class counsel are clearly experienced in class action litigation.  (See ECF Nos. 68-3 and 69-2 (counsels' declarations detailing other cases where they have been appointed class counsel in wage and hour actions).)  Because plaintiff showed the adequacy prerequisite was satisfied under Rule 23(a), the court finds the requirement under Rule 23(e)(2) is also satisfied.  See Flores v. Dart Container Corp., 2021 WL 1985440, at *5 (E.D. Cal. May 17, 2021) ("Because the court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met").).

1          **2.  Arm's Length Negotiation**

2          The second factor requires the court to consider whether the proposed settlement was

3   negotiated at arm's length.  Rule 23(e)(2)(B); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965

4   (9th Cir. 2009) (noting the importance of evaluating whether the settlement was the product of

5   "an arms-length, non-collusive, negotiated resolution").  The inquiry of collusion addresses the

6   possibility that the settlement agreement is the result of either "overt misconduct by the

7   negotiators" or improper incentives of class members at the expense of others.  Staton, 327 F.3d

8   at 960.  The Ninth Circuit has observed that "settlement class actions present unique due process

9   concerns for absent class members" because the "inherent risk is that class counsel may collude

10  with the defendants, tacitly reducing the overall settlement in return for a higher attorneys' fee."

11  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation

12  marks, citations omitted).  Thus, the court is to examine the agreement for "subtle signs" of self-

13  dealing by counsel, such as where:  (a) "counsel receive a disproportionate distribution of the

14  settlement, or [] the class receives no monetary distribution but class counsel are amply

15  rewarded"; (b) payment of attorneys' fees occurs "separate and apart from class funds" and goes

16  unopposed (a "clear sailing" agreement), which "carries the potential of enabling a defendant to

17  pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement

18  on behalf of the class"; or (c) "the parties arrange for fees not awarded to revert to defendants

19  rather than be added to the class fund."  Id. at 947 (cleaned up).

20         Here, the proposed settlement is the product of lengthy negotiations between the parties

21  after the exchange of sufficient discovery.  The court notes none of the "subtle signs" are present

22  here, as counsels' attorney fee request is typical for these kinds of wage-and-hour claims (ECF

23  No. 69-1 at 6-7) and there is no reversion of funds to defendant (ECF No. 61-2 at ¶ 33).  Thus, the

24  court finds that this factor is satisfied.  See, e.g., Chambers v. Whirlpool Corp., 980 F.3d 645, 669

25  (9th Cir. 2020) (finding no collusion where, among other things, "the parties settled via arm's

26  length negotiations . . . ."); Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013)

27  (holding that a settlement reached after informed negotiations "is entitled to a degree of deference

28  as the private consensual decision of the parties").

### 3. Adequacy of Relief Provided to the Class

The "adequacy of relief" determination requires consideration of four sub-factors:

    i.       the costs, risks, and delay of trial and appeal;

    ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

    iv.    any agreement required to be identified under Rule 23(e)(3).

See Rule 23(e)(2)(C).  The amount offered in the proposed settlement agreement is generally the most important consideration of any class settlement.  See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

### i. Costs, risks, and delay vs. settlement amount and scope of released claims

In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.  See Rodriguez, 563 F.3d at 964. A "central concern" in evaluating a class settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Feltzs v. Cox Comm's Cal., LLC, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Rule 23(e), 2018 Advisory Committee Notes [modification in original].)  The Ninth Circuit has observed that the inquiry is one of balance, and "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).  Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the parties agreed to settle this case for a non-reversionary sum of $768,000.  (ECF No. 61-2, ¶ 10.)  After deductions for an incentive award, attorneys' fees (assuming full approval of the requests), litigation costs, settlement administrator fees, and the PAGA payment to the LWDA, the court calculates a net settlement fund of $531,685.  (See ECF No. 61-2 at ¶¶ 3, 7, 24; see also ECF No. 61-1 at ¶ 4; ECF Nos. 68-1 and 69-1.)  The Agreement allocates 70% of the net fund for the Technologist Subclass and 30% for the Assistant Subclass (due to the general pay

1    disparity between the two subclasses).  The Settlement Administrator estimates the "Technologist

2    Subclass members will receive an estimated average gross payment of $8,425.00, with the

3    estimated highest gross payment being $30,530.35."  (ECF No. 68-2 at ¶ 18.)  The Administrator

4    also estimates that the "Assistant Subclass members will receive an estimated average gross

5    payment of $3,791.25, with the estimated highest gross payment being $12,857.09."  (Id. at ¶ 17.)

6         This amount represents approximately a little over one-sixth of the estimated hypothetical

7    maximum damages ($4,462,420.26).  (ECF No. 61 at 6-8.)  However, the court continues to

8    concur with counsels' analysis concerning the weaknesses in plaintiff's case, which includes not

9    only the general uncertainties with litigating a case through trial, but also the need to rely on

10   "unaided memories" and lack of documentation for the rest periods, differences between

11   plaintiff's diligent recordkeeping and that of less-diligent class members, the low value of the

12   cellphone use policy, and the possibility that some employees did receive some, but not all, meal

13   breaks.  (Id.)  The settlement amount results in a recovery that is in range of settlements that have

14   been approved by California courts.  See, e.g., In re Mego, 213 F.3d at 458-59 (affirming a

15   settlement of one-sixth the potential recovery for weak and risky case); O'Connor v. Uber Techs.,

16   Inc., 201 F. Supp. 3d 1110, 1129 (N.D. Cal. 2016) (noting that 10% of the verdict value of non-

17   PAGA claims is generally considered "the low end of reasonable recovery.").

18        The court also finds the settlement amount to be fair and reasonable in light of what the

19   class "actually gave up by settling."  Campbell v. Facebook, Inc., 951 F.3d 1106, 1123 (9th Cir.

20   2020).  The Settlement Agreement provides that each class member, by accepting their portion of

21   the settlement and not opting out, will release defendant from:

22            [A]ll claims and/or causes of action arising from or related to the
              Lawsuit under any federal, state, or local law, regulation, wage order,
23            or administrative order that were raised in the Lawsuit and that could
              have been raised in the Lawsuit based on the allegations therein, and
24            which arise out of or directly or indirectly relate to such allegations,
              whether known or unknown, including but not limited to the alleged
25            failure to properly classify Class Members, failure to pay wages,
              including minimum and overtime wages, failure to reimburse for
26            expenses, failure to provide compliant meal and rest breaks, failure
              to pay meal and rest period premiums/penalties, failure to timely pay
27            all earned wages during and at the completion of employment, and
              failure to furnish complete and accurate itemized wage statements.
28            Participating Class Members' Released Claims include claims for

1
2
3
4
5

> restitution and other equitable relief under Business and Professions Code sections 17200, et seq., conversion, restitution of any nature that arise from the factual predicates alleged or could have been alleged in the Lawsuits, statutory penalties, civil penalties, interest, liquidated damages, reasonable attorneys' fees and costs, and any other claims that are raised or could have been raised in the Lawsuits through the earliest of January 22, 2022 (i.e., 120-days from the Parties' endorsement of the Memorandum of Understanding on September 24, 2021) . . . . [4]

6    (ECF No. 61-2 at ¶ 20.)

7          This release language is permissibly pinned to the facts and allegations stated in the 3AC,

8    and so is sufficient to allow any future potential litigant to raise the scope of the release so all can

9    determine the preclusive effect of the Agreement on whatever facts present themselves.  See

10   Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) (noting class action settlement

11   agreements cannot release claims of absent class members that are unrelated to the factual

12   allegations of the class complaint).  Thus, the court finds the scope of release to be fair and

13   reasonable when compared to the amount of the settlement.  Campbell, 951 F.3d at 1123.

14         Finally, though the parties have engaged in discovery allowing them to broadly evaluate

15   the case's merits and defendant's potential maximum exposure, the court recognizes that

16   significant discovery still lies ahead.  When coupled with this court's heavily impacted caseload

17   and the risk of further delay in a post-trial appeal before the Ninth Circuit, it is clear that these

18   significant delays would persist if the parties decided to take this case to trial.

19         Given the above facts, the costs, risks, and delay of any potential trial weigh in favor of

20   settlement, as the recovery in this action is well above approved settlements in other cases.  See,

21   e.g., Benitez v. Western Milling, LLC, 2020 WL 309200, at *8 (E.D. Cal. Jan. 21, 2020)

22   (observing a recovery rate of 13% when PAGA penalties were included).

23   ///

24   ///

25

26   [4] The agreement carves out " any claim which may arise or may have arisen at any time in favor of plaintiff Monica Ranger and against defendant for unlawful retaliation or unlawful
27   discrimination, including any claim pursuant to California Labor Code §§ 98.6 and 98.7 and related law."  (ECF No. 61-2 at ¶ 20.)  This carveout does not affect the propriety of the class
28   action settlement, and the court offers no perspective on any such claims.

1

### ii.  Effectiveness of proposed method of distributing relief

2     "[T]he goal of any distribution method is to get as much of the available damages remedy

3     to class members as possible and in as simple and expedient a manner as possible."  Hilsley v.

4     Ocean Spray Cranberries, Inc., 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final

5     approval criteria— Rule 23(e)(2)(C)(ii): Distribution method," 4 Newberg on Class Actions

6     § 13:53 (5th ed.)).  "Often it will be important for the court to scrutinize the method of claims

7     processing to ensure that it facilitates filing legitimate claims."  Rule 23(e), 2018 Advisory

8     Committee Notes.  The proposed method for processing claims "should deter or defeat unjustified

9     claims, but the court should be alert to whether the claims process is unduly demanding."  Id.

10    Under the Settlement Agreement, class members did not have to submit claims to receive

11    payment.  Instead, they were identified through defendant's employment records, received a

12    notice calculating each member's potential award based on how many workweeks worked during

13    the class period (as determined by defendant's employment records), and were given an

14    opportunity to dispute the calculations.  Remarkably, the Settlement Administrator has notified all

15    class members and none chose to opt out or object to the Agreement's terms.  (ECF No. 68-2.)

16    Further class members will receive the settlement payment by mail.  (ECF No. 61-2 at ¶¶ 38-43.)

17    This method of distributing relief is "simple and effective."  Loreto v. Gen. Dynamics Info. Tech.,

18    Inc., 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021); Jackson v. Fastenal Co., 2021 WL

19    5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is

20    effective and weighs in favor of a finding that the settlement agreement is fair, reasonable and

21    adequate" where the class members did not have to file a claim).  Thus, this factor weighs in

22    favor of final approval of the settlement.

23

### iii.  Terms of proposed award of attorneys' fees

24    When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any

25    proposed award of attorneys' fees.'"  McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir.

26    2021) (quoting Rule 23(e)(2)(C)(iii)).  The Ninth Circuit has explained, "the new Rule 23(e)

27    makes clear that courts must balance the proposed award of attorneys' fees vis-à-vis the relief

28    provided for the class in determining whether the settlement is adequate for class members."  Id.

In settlements that produce a common fund, courts may use either the lodestar method or percentage-of-recovery method to determine the reasonableness of attorneys' fees.  In re Bluetooth, 654 F.3d at 942.  Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."  Id.  However, a departure may be justified based on "special circumstances."  Id.  The California Supreme Court also has endorsed fee awards based on a percentage of recovery and use of a lodestar crosscheck.  See Laffitte v. Robert Half Internat. Inc., 1 Cal. 5th 480, 486, 504-06 (2016) (approving a fee award of one-third of the gross settlement in a wage and hour class action).

Here, the Agreement provides that class counsel is allowed to request attorneys' fees up to 33.33% percent (one-third) of the gross settlement amount.  (ECF No. 61-2 at ¶ 3.)  However, counsel indicates in his declaration that he does not intend to request fees in excess of 25% of the fund.  (ECF No. 61-1 at ¶ 4.)  This is within the range of acceptable fees in the Ninth Circuit and equal to the benchmark.  See Powers, 229 F.3d at 1256; Baten v. Michigan Logistics, Inc., 2022 WL 17481068, at *6 (C.D. Cal. Dec. 6, 2022) ("The requested attorneys' fees of one-third of the settlement [or less] does not represent a disproportionate distribution for purposes of determining collusion.").  This also comports with California precedent.  Laffitte, 1 Cal. 5th at 504-06.  Further, as the Settlement Agreement awards each class member a portion of the fund on a pro rata basis, any lowering of this amount by the court would allow for those unallocated funds to be distributed to class members.  Given this fact, the court finds counsels' fee request does not weigh against approval of the settlement.  McKinney-Drobnis, 16 F.4th at 607.

### iv.  Agreements made in connection with the proposal

The court must consider any agreement that is required to be identified under Rule 23(e)(3).  Rule 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Rule 23(e)(3).  Aside from what has been identified in this order regarding class counsels' fees and costs, administrator costs, and incentive awards, the Settlement Agreement constitutes the entire agreement.  (ECF No. 61-2 at ¶ 60.)  Thus, this weighs in favor of approving the settlement.

///

### 4.   Equitable Treatment of Class Members

The fourth factor addresses whether the proposed settlement agreement "treats class members equitably relative to each other."  See Rule 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  Hilsley, 2020 WL 520616 at *7 (citation omitted).  This inquiry considers both equity across sub-categories of the class, and equity between class representatives and unnamed class members.  Id.

Here, the Settlement Agreement does discriminate between the two subclasses, except for a logically permissible reason.  Counsel has noted the pay disparity between the Technologist subclass and the Assistant subclass, and this disparity generally aligns with the 70% vs. 30% split of the net settlement fund between the classes.  As described in the Settlement Agreement, the parties have devised a formula that portions each class member's recovery based on the number of total weeks worked in both the Rule 23 and PAGA periods.  (ECF No. 61-2 at ¶¶ 5¶¶ 33-34.)  Given that the logic of this is to distribute the funds as equitable as possible on a pro rata basis based upon their number of workweeks each class member worked (and based on their rate of pay), the agreement treats class members equitably, and the proposed distribution plan supports final approval.  See Cooks v. TNG GP, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing a calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked . . . is fair and treats class members equitably"); Gomez-Gasca v. Future AG Mgmt. Inc., 2020 WL 6149688 at *4 (N.D. Cal. 2020) (same).

As to equitable treatment between the class representative and the class members, the court incorporates its discussion below regarding the incentive award.  Given that the Settlement Agreement does not attempt to strip the court of its discretion on this matter, this is not a source of impermissible inequity.  Staton, 327 F.3d at 977.

### 5.   Reaction of Class Members to the Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  Nat'l Rural Telecomms., 221 F.R.D. at 529; see also Cottle, 340 F.R.D. at 376

(observing the court may assess the reaction of class members by considering "how many class members submitted . . . objections" at the final approval stage).

After receiving the court-approved notice, class members reacted favorably to the proposed settlement terms by not requesting exclusion or submitting objections.  (ECF No. 68-2 at ¶¶ 11-15.)  This "strongly supports settlement."  Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); see also Taylor v. Populous Group, LLC, 2023 WL 139724, at *3 (S.D. Cal. Jan 9, 2023) (finding the class members' reaction to the settlement supported final approval where no objections to the settlement were filed); Manzo v. McDonalds Rests. of Cal., Inc., 2022 WL 4586236, at *8 (E.D. Cal. Sept. 29, 2022) (same).  Accordingly, this factor weighs in favor of final approval.

**C.  Settlement of PAGA Penalties Claim**

The 3AC's Seventh Cause of Action asserts a claim for PAGA penalties, on behalf of plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code violations asserted.  (ECF No. 65 at 12-15.)  PAGA claims and their settlement are fundamentally distinct from Rule 23 class claims.  See Hamilton, 39 F.4th at 583 ("Rule 23 class actions and PAGA actions are so conceptually distinct that class action precepts generally have little salience for PAGA actions."); Canela, 971 F.3d at 852 (noting "the different remedial schemes that exist in Rule 23 class actions and PAGA suits").

**Legal Standards**

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees.  Cal. Lab. Code § 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees."  Kim, 9 Cal. 5th at 87 (emphasis in original).  Because a PAGA plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government."  Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009).  "Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim."  Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (2021)

(internal quotes omitted).  Thus, a PAGA plaintiff owes a duty both to their "fellow aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to the public at large because the PAGA plaintiff acts, "as the statute's name suggests, as a private attorney general."  O'Connor, 201 F. Supp. 3d at 1134.

Under PAGA's remedial scheme, civil penalties recovered are distributed between "the aggrieved employees" (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of PAGA claims must be approved by the court; and the proposed settlement must be sent to the LWDA alongside submission to the court. [5]  Cal. Lab. Code § 2699(*l*)(2).  Although the court does not evaluate the settlement of PAGA claims under the Rule 23 criteria, it must still inquire into the fairness of the PAGA settlement.  "[I]n reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine both aspects of the settlement."  O'Connor, 201 F. Supp. 3d at 1133.  Based on the best guidance at hand, district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."  Haralson, 383 F. Supp. 3d at 972; see also, e.g., Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal. June 27, 2022) (noting lack of binding standard for approving PAGA settlements and adopting "fundamentally fair, reasonable, and adequate" standard based on LWDA's O'Connor commentary).

"While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the adequacy of compensation to the class as well as the adequacy of the settlement in view of the purposes and policies of PAGA.  In doing so, the court may apply a sliding scale."  O'Connor, 201 F. Supp. 3d at 1134 (cleaned up).  "For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled."  Id.  Non-monetary relief provided through the settlement may also satisfy PAGA's interests in enforcement and deterrence.  Id. at 1134-35.  Conversely, in cases where a settlement provides "relatively modest" amounts in settlement of the class claims compared to their verdict value, and there is no non-monetary relief

---

[5]  The complaint states the LWDA was provided with written notice of the suit in January of 2020 at the inception of this case and the LWDA did not respond.  (ECF No. 65 at ¶ 101.)  Counsel confirmed the LWDA received a copy of the revised agreement, as per the terms of the Settlement Agreement.  (ECF No. 61-2 at ¶ 76; ECF No. 72.)

1  provided, the PAGA aspect of the settlement must stand on its own to "substantially vindicate"

2  PAGA's policy interests.  Id. at 1135.

3  **Analysis**

4  Here, the Settlement Agreement provides for $32,000 in PAGA penalties, out of the gross

5  settlement amount of $768,000.  (ECF No. 61-2, ¶¶ 10, 17.)  Class counsel estimates the

6  maximum PAGA penalties at trial could be just over $2 million—if all penalties for all claims

7  were awarded at the maximum value.  (ECF No. 61-1 at ¶¶ 8-9.)  However, the court concurs

8  with counsels' assessment regarding the uncertainty of the case.  See, e.g., Carrington v.

9  Starbucks Corp., 30 Cal. App. 5th 504, 529 (2018) (noting the trial court's discretionary authority

10  to award lesser penalties where defendant exercised a good faith attempt to comply with the

11  Labor Code and affirming the trial court's award of $5 per violation).  Given the uncertainties in

12  the case and the robustness of the average individual payments to class members, the court is

13  persuaded that PAGA's interests are satisfied.  O'Connor, 201 F. Supp. 3d at 1134.

14  Considering the other factors from Rule 23(e)(2), the court finds the PAGA portion of the

15  settlement to be similarly fair and adequate for the PAGA members.  Though the PAGA payment

16  will be much lower than the payments under the Rule 23 settlement, this will ultimately benefit

17  the class members, as PAGA's 75%-to-25% allocation would only shift funds away from the

18  class members—who are the same set of individuals as the PAGA members.  See, e.g., Rodriguez

19  v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving

20  0.6% PAGA payment because LWDA did not object to terms of settlement).  The LWDA did not

21  object to the settlement.  See, e.g., Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at *2

22  (S.D. Cal. Sept. 18, 2018) (taking LWDA's "acquiescence as indication that the settlement is

23  presumptively reasonable").  Finally, the parties have accounted for the distinction between Rule

24  23 opt outs and PAGA's opt-out bar, as the settlement agreement and notice inform as much.

25  Amaro, 69 Cal. App. 5th at 541 n.5.

26  For these reasons, the court finds the settlement of the PAGA penalties claim to be

27  fundamentally fair, reasonable, and adequate."  See Haralson, 383 F. Supp. 3d at 972.

28  ///

1     **D.  Attorneys' fees, costs, and incentive award**

2          Beyond final certification of the class and approval of the class action and PAGA

3     settlements, plaintiff seeks an order granting:  (1) an award of fees to class counsel; (2)

4     reimbursement of litigation costs, including the settlement administrator's fees; and (3) an

5     incentive award for the named plaintiff.  Any such awards are to be deducted from the gross

6     settlement amount prior to the pro rata distribution of the net fund.  (ECF No. 61-2 at ¶¶ 3, 7, 24.)

7          **1.  Class Counsels' Fees**

8          Pursuant to the Settlement, class counsel may seek attorneys' fees up to one-third of the

9     gross settlement amount, or up to $256,000.  (ECF No. 61-2 at ¶ 3.)  However, since plaintiff's

10    motion for preliminary approval, counsel has maintained intent to seek a quarter of the gross

11    settlement amount, or $192,000.  (ECF Nos. 69-1 (motion for fees) and 61-1 at ¶ 4 (decl. Watson,

12    submitting that the forthcoming attorneys' fee motion will not request more than 25% of the gross

13    settlement amount).)  Counsel maintains this is reasonable in light of the benefit provided to class

14    members, similar awards in this district in these kinds of cases, and counsels' lodestar cross check

15    ($215,570).  (ECF No 69-1.)  For the reasons that follow, the court concurs.

16         **Legal Standards**

17         "[A] district court must carefully assess the reasonableness of a fee amount spelled out in

18    a class action settlement agreement."  Staton, 327 F.3d at 963.  Thus, a court "may not

19    uncritically accept a fee request," but must review the time billed and assess whether it is

20    reasonable in light of the work performed and the context of the case.  Common Cause v. Jones,

21    235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); see also McGrath v. County of Nevada, 67 F.3d

22    248, 254 n.5 (9th Cir. 1995) (a court may not adopt representations regarding the reasonableness

23    of time expended without independent review); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378,

24    1385 n.3 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request when "the

25    district court engaged in the 'regrettable practice' of adopting the findings drafted by the

26    prevailing party wholesale" and explaining a court should not "accept[ ] uncritically [the]

27    representations concerning the time expended").

28    ///

The court has discretion to use either a lodestar or percentage of the common fund analysis to evaluate a fee request.  In re Bluetooth, 654 F.3d at 942; Laffitte, 1 Cal. 5th at 504-06.  Under a common fund calculation, "the court makes a fee award on the basis of some percentage of the common fund."  State of Fla. v. Dunne, 915 F.2d 542, 545 n.3 (9th Cir. 1990).  "The typical range of acceptable attorneys' fees in the Ninth Circuit is one-fifth to one-third of the total settlement value, with 25% considered the benchmark."  Vasquez v. Coast Valley Roofing, 266 F.R.D. 482, 491 (E.D. Cal. 2010).  To evaluate whether the requested percentage is reasonable, courts may consider a number of factors, including the results obtained for the class; the risk undertaken by class counsel, including the complexity of the issues; the length of the professional relationship between class counsel and the plaintiff; and the market rate for similar cases, with a lodestar cross-check.[6]  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).  The percentage of the common fund awarded as fees may be adjusted below or above the benchmark, but the court's reasons for adjustment must be clear.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).  Regardless of which method is used, the fees awarded must be "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 963 (quoting Rule 23(e)).

The fee applicant bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1121 (9th Cir. 2000).  This can be done with records documenting the tasks completed and the amount of time spent.  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007).  "Where the documentation of hours in inadequate, the district court may reduce hours accordingly."  Hensley, 461 U.S. at 433.

////

---

[6] The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate"—the product yielding a presumptively reasonable fee.  Florida, 915 F.2d at 545 n. 3.  A full lodestar analysis requires consideration of a host of factors—many of which either explicitly or generally align with the other common-fund factors.  See Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975); Quesada v. Thomason, 850 F.2d 537, 539 (9th Cir. 1988) (indicating the court should "consider[] some or all twelve relevant criteria set forth in Kerr" to determine whether to deviate from the lodestar).

1    **Analysis**

2        Here, the court finds class counsels' request for $192.000 in attorneys' fees, or 25% of the

3    common fund, to be reasonable.  As this action is before this court on diversity jurisdiction for

4    alleged violations of state law, the court follows California's instructions regarding attorneys'

5    fees.  Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).  Attorneys' fees

6    are awardable to a prevailing party in wage-and-hour disputes.  Cal. Lab. Code § 218.5 ("In any

7    action brought for the nonpayment of wages . . ., the court shall award reasonable attorney s fees

8    and costs to the prevailing party."); see also, e.g., Naranjo v. Spectrum Sec. Servs., Inc., 13 Cal.

9    5th 93, 117 (2022) (missed-break premium pay constitutes wages for purposes of California law).

10       Regarding the results obtained for the class and the risks and complexity of the issues, the

11   undersigned references Section II.B.3.i ("Costs, risks, and delay vs. settlement amount") above.

12   Specifically, the undersigned notes the significant amount obtained for the class in the net

13   settlement fund of $531,685.  (See ECF No. 61-2 at ¶¶ 3, 7, 24.)  This is estimated to provide to

14   the Technologist Subclass an "average gross payment of $8,425.00, with the estimated highest

15   gross payment being $30,530.35"; and to the Assistant Subclass Members "an estimated average

16   gross payment of $3,791.25, with the estimated highest gross payment being $12,857.09."  (See

17   ECF Nos. 61-1 at ¶ 4; 68-1; 68-2 at ¶§ 17-18; and 69-1.)  While this amount is less than the

18   hypothetical maximum damages found by counsel, the court reaffirms its findings concerning the

19   significant risks and weaknesses in plaintiff's case.  (ECF No. 61 at 6-8.)  Counsel's request of

20   25% of the common fund is in line with the benchmark market rate, supporting an award here.

21   Vasquez, 266 F.R.D. at 491.  The court also notes the contingency fee nature of counsel's

22   representation in this case, finding it supports the benchmark award of fees.  Clayton v. Knight

23   Transp., 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (acknowledging the contingent nature

24   was "an important factor," but finding an award equal to the benchmark was appropriate where

25   "the risks associated with this case are no greater than [those] associated with any other wage and

26   hour action").  Cross-checking this award against the lodestar, the court finds the amount

27   reasonable, as counsel reported 407.9 hours of attorney time.  (ECF No. 69-2 at ¶ 13.)  Even at

28   the median rate for Sacramento, the lodestar approximates 25% of the common fund.

**2. Litigation and Settlement Administrator Costs**

**Legal Standards**

Generally, reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Rule 54. In addition, costs may be awarded under California law to an employee who prevails on a PAGA claim.  See Cal. Lab. Code § 2699(g).  Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.  See Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994).  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  Ontiveros v. Zamora, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).

**Analysis**

The Settlement Agreement allowed class counsel to seek "litigation costs and expenses not to exceed $20,000." (ECF No. 61-2 at ¶ 3.)  However, plaintiff's counsel only requests fees in the amount of $1,815 for filing fees, service of process, and court reporter fees.  ECF No. 69-2 at ¶ 21.)  Counsel states that "[o]ther costs such as obtaining records, electronic legal database costs, consultant costs, postage and copies [were] absorbed by counsel for the benefit of the class."  Notably, this results in an increase of the net fund by over $18,000.  These costs are routinely reimbursed, and so this request is granted.  See Ontiveros, 303 F.R.D. at 375 (finding costs including to mediation, court fees, research, and expert fees were "reasonable litigation fees" and approving class counsel's request for costs).

The Settlement Agreement also allowed for reimbursement of the Settlement Administrator's costs, up to $15,000.  (ECF No. 61-2 at ¶ 24.)  However, the Settlement Administrator indicated it was able to notify all members of the class with a little more than half of that allotted budget, at $8,500.  (ECF Nos. 68-2 at ¶ 20; 69-1 at 10.)  Notably, this results in an increase in the net fund of $6,500.  (See id.)  Settlement administrator costs are routinely reimbursed in class action settlements.  See, e.g., Rodriguez v. Nike Retail Servs., Inc., 2022 WL 254349, at *7 (N.D. Cal. Jan. 27, 2022); Local Rule 292(f)(11).  The court finds the requested costs to be reasonable and grants an award of $8,500 to the ILYM Group.

///

21

1        **3.   Incentive Award**

2        <u>Legal Standards</u>

3        A class representative may receive a share of class recovery above and beyond the

4    individual claim with a service payment, also known as an "incentive payment.  <u>Staton</u>, 327 F.3d

5    at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").  However,

6    incentive payments for class representatives are not to be given routinely.  <u>See id.</u> at 975 (noting

7    that "[i]f class representatives expect routinely to receive special awards in addition to their share

8    of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class

9    members whose interests they are appointed to guard"); <u>Radcliffe v. Experian Info. Solutions</u>,

10   715 F.3d 1157, 1165 (9th Cir. 2013) ("[D]istrict courts must be vigilant in scrutinizing all

11   incentive awards.").

12       In evaluating a request for a service payment to a class representative, the court must

13   consider:  "the actions the plaintiff has taken to protect the interests of the class, the degree to

14   which the class has benefitted from those actions, the amount of time and effort the plaintiff

15   expended in pursuing the litigation, and any financial or reputational risks the plaintiff faced."  <u>In

16   re Apple Inc. Device Performance Litig.</u>, 50 F.4th 769, 786 (9th Cir. 2022) (cleaned up).  Further,

17   payments may recognize a plaintiff's "willingness to act as a private attorney general" in PAGA

18   actions.  <u>Rodriguez</u>, 563 F.3d at 958-59.  A service payment of $5,000 for the class representative

19   "is presumptively reasonable" in the Ninth Circuit.  <u>Richardson v. THD At-Home Servs.</u>, 2016

20   WL 1366952, at *13 (E.D. Cal. Apr. 6, 2016); <u>see also</u> <u>Gonzalez v. NCI Group, Inc.</u>, 2023 WL

21   373252, at *9 (E.D. Cal. Jan. 24, 2023) ("Courts routinely find rewards in the amount of $5,000

22   to be reasonable").

23       <u>Analysis</u>

24       Here, the Settlement Agreement allows for a class representative incentive award of

25   $10,000; which is what plaintiff now seeks.  (ECF Nos. 61-2 at ¶ 7; 69-1.)  Plaintiff argues this

26   award is appropriate because she:  (a) "took the laboring oar to retain counsel, supervise litigation

27   as a client, participate in records investigation and math-intensive review with counsel,

28   production of documents, and review of information from defendant"; (b) "opened herself up to

1   risk of an adverse outcome and resulting cost award"; and (c) made efforts that "generated well

2   over $500,000 in net recovery for her coworkers"—none of whom objected or opted out.

3   Plaintiff asserts she "undertook the effort to identify the core wage and hour issues in this matter,

4   and retained counsel for benefit of all claimants" and "discuss[ed] her own employment records

5   in detail, to identify witnesses who could support the matter, to identify witnesses and potential

6   testimony that might be counterproductive to the claimants, to evaluate defendant's contentions,

7   and to critically consume damages models and potential litigation options presented by counsel."

8   Plaintiff generally asserts she spent "many hours in conference with her counsel in this matter",

9   and argues that had she not spearheaded this action, "there is no known proceeding through which

10  the claimants would have been likely to obtain any relief at all."  (ECF Nos. 69-1; 69-2 at ¶ 22.)

11          The court concurs with plaintiff's assertions.  While plaintiff would have undertaken

12  many of these actions if she had brought the individual litigation, her efforts have benefitted class

13  members and PAGA aggrieved workers with a not-insubstantial award that they may not have

14  otherwise obtained.  Staton 327 F.3d at 977 (benefit to the class supports a service award);

15  Rodriguez, 563 F.3d at 958-59 (willingness to act as a private attorney general supports service

16  award).  Though plaintiff does not state the number of hours she spent in connection with the

17  litigation, the description of her actions demonstrate significant time dedicated to the action—and

18  support an award.  Greer v. Dick's Sporting Goods, Inc., 2020 WL 5535399, at *4 (E.D. Cal.

19  Sept. 15, 2020) (noting this district has awarded service payments for "substantial efforts taken as

20  a class representative when the plaintiff has undertaken at least 30 to 40 hours of work").  The

21  risk that plaintiff would have been subjected to costs if she had lost at trial supports an award.

22  See, e.g., Vasquez, 266 F.R.D. at 491 ("Class representatives undertook the financial risk that, in

23  the event of a judgment in favor of defendant in this action, they could have been personally

24  responsible for any costs awarded in favor of defendant.").  While the amount of plaintiff's

25  request is higher than what is normally found reasonable, the court finds plaintiff's request here

26  reasonable in light of her actions and significant remuneration provided to the class.  Richardson,

27  2016 WL 1366952 at *13.  Thus, the court awards the named plaintiff a service award of $10,000.

28  ///

1

**ORDER**

2      For the above reasons, it is HEREBY ORDERED that:

3    1.  This Order incorporates by reference the definitions in the operative Settlement

4        Agreement as though fully set forth herein, and all terms defined therein shall have the

5        same meaning as set forth in the Settlement Agreement (see ECF No. 61-2);

6    2.  This Court has jurisdiction over the claims of the Class Members asserted in this

7        proceeding, personal jurisdiction over Plaintiff and Defendant and the Class Members

8        as defined in the Settlement Agreement, and subject matter jurisdiction to approve the

9        Settlement;

10   3.  The Settlement is fair, adequate and reasonable, and so the settlement terms set forth

11       in the Settlement Agreement are APPROVED;

12   4.  John T. Stralen and Joshua H. Watson of Clayeo C. Arnold, PC are APPOINTED as

13       class counsel and Plaintiff Monica Range is APPOINTED as class representative for

14       purposes of concluding the Settlement in accordance with the Order and the

15       Settlement Agreement;

16   5.  The class defined in the Settlement Agreement (ECF No. 61-2 at ¶¶ 5-6) is

17       CERTIFIED for settlement purposes;

18   6.  The notice provided to the Class Members was reasonable and was the best notice

19       practicable under the circumstances and was valid, due, and sufficient notice to Class

20       Members in full compliance with the requirements of applicable law, including the

21       Due Process Clause of the United States Constitution.  A reasonable opportunity has

22       been afforded to the Class Members to participate in this Final Approval hearing;

23   7.  All Settlement Class Members are bound by this Settlement Order and Judgment and

24       by the Settlement embodied therein, including the Releases provided for in the

25       Settlement and this Settlement Order and Judgment.  No Class Member requested to

26       be excluded from the Settlement or objected to the Settlement Agreement.  As of the

27       Effective Date of Settlement, by operation of the entry of this Settlement Order and

28       Judgment, each member of the Settlement Class Members, including Plaintiff, shall be

deemed to have fully released, waived, relinquished and discharged, to the fullest extent permitted by law, the member's respective Released Claims that the member may have against the Releasees.  By virtue of the Settlement Agreement, the Class Member have released the "Released Parties" of the "Released Claims" and as may otherwise be provided in the Settlement Agreement (see ECF No. 61-2 at ¶¶ 20-21);

8.  The Individual Settlement Payments provided for under the Settlement are fair and reasonable in light of all the circumstances, and so the calculations and the payments shall be made and administered in accordance with the terms of the Settlement;

9.  Class Counsel's application for an award of fees of $192,000 and costs of $1,815 are GRANTED;

10. Plaintiff Monica Ranger's request for Service Award in the amount of $10,000.00 is GRANTED;

11. The $8,500 administrator fees of the Settlement Administrator, ILYM Group, Inc., are APPROVED pursuant to the terms of the Settlement Agreement;

12. Pursuant to the terms of the Settlement Agreement, this action is DISMISSED WITH PREJUDICE;

13. Without affecting the finality of this Settlement Order and Judgment, the Court RETAINS continuing and exclusive jurisdiction over the parties to the Settlement, including Defendant and Settlement Class Members, to administer, supervise, construe and enforce the Settlement in accordance with its terms for the mutual benefit of the Parties; and

14. The Clerk of the Court shall enter this Order as a Final Judgment in the docket of this action.

Dated:  December 8, 2023

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

rang.401

25